# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

GLEN A. McDEVITT, an unmarried man,

        Respondent,

        v.

HARBORVIEW MEDICAL CENTER, a King County Public Hospital, and JOHN DOE and JANE DOE; UNIVERSITY OF WASHINGTON dba UW MEDICINE/PHYSICIANS, and THE STATE OF WASHINGTON, a governmental entity,

        Petitioners.

No. 85367-3

ORDER WITHDRAWING PREVIOUS OPINION AND SUBSTITUTING NEW OPINION

WHEREAS, a slip opinion in the above-entitled case was filed on December 27, 2012;

WHEREAS, on June 13, 2013, the Court entered an order partially granting the respondent's motion for reconsideration in order to consider whether the decision should be given only prospective application; and

WHEREAS, upon reconsideration, the Court has written a new opinion to replace the previously filed opinion;

Now, therefore, it is hereby

ORDERED:

That the slip opinion filed in this case on December 27, 2012 is WITHDRAWN and is replaced by the new slip opinion that is being filed simultaneously with this order.

DATED at Olympia, Washington this 14th day of November, 2013.

For the Court

Madsen, C.J.
CHIEF JUSTICE



**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___ NOV 1 4 2013

_Madsen C.J._
**CHIEF JUSTICE**

This opinion was filed for record
at 8:00 am on Nov 14, 2013

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

GLEN A. McDEVITT, an unmarried
man,

          Respondent,

     v.

HARBORVIEW MEDICAL
CENTER, a King County Public
Hospital, and JOHN DOE and JANE
DOE; UNIVERSITY OF
WASHINGTON dba UW
MEDICINE/PHYSICIANS, and
THE STATE OF WASHINGTON, a
governmental entity,

          Petitioners.

No. 85367-3

En Banc

Filed ___NOV 1 4 2013

J.M. JOHNSON, J. — In *Waples v. Yi*, 169 Wn.2d 152, 161, 234 P.3d 187 (2010), this court held that separation of powers principles invalidated the 90 day presuit notice requirement against medical malpractice defendants, as adopted by the legislature in former RCW 7.70.100(1) (2006).

We now further explain that holding, recognizing express constitutional authority in article II, section 26 for the legislature to direct "in what manner, and in what courts, suit may be brought against the state." We conclude that the 90 day presuit notice requirement is constitutional as applied against the State on the grounds that the legislature may establish conditions precedent, including presuit notice requirements.[1] While recognizing the statutory waiver of sovereign immunity,[2] we have upheld similar procedural requirements for suit against the State (e.g., those codified in former RCW 4.92.110 (1977) and former RCW 4.96.020(4) (1993)). Thus, we hold that the presuit notice requirement of former RCW 7.70.100(1) as applied to the State is a constitutionally valid statutory precondition for suit against the State because it was adopted by the legislature as provided in article II, section 26 of the Washington Constitution.[3]

---

[1] *See Nelson v. Dunkin*, 69 Wn.2d 726, 729, 419 P.2d 984 (1966) ("[T]he right to sue the state, a county, or other state-created governmental agency must be derived from statutory enactment; and it must be conceded that the state can establish the conditions which must be met before that right can be exercised.").

[2] *Hunter v. N. Mason High Sch.*, 85 Wn.2d 810, 818, 539 P.2d 845 (1975).

[3] Article II, section 26 of the Washington Constitution provides, "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state."

However, in this case, because the plaintiff reasonably relied upon this court's holding in *Waples* and chose to forgo the notice requirement of former RCW 7.70.100(1), we conclude that our decision merits prospective-only application and will not apply to this case. For that reason, although it was based on an overbroad interpretation of *Waples* that conflicts with our present holding, we affirm the King County Superior Court's denial of Harborview's motion for summary judgment.

FACTS AND PROCEDURAL HISTORY

On July 9, 2007, Glen A. McDevitt was paragliding and crashed into tree branches that threw him onto a roof, a chimney, and then the ground. He sustained a fracture to his left femur and underwent surgery at Harborview Medical Center on July 10, 2007. After surgery and upon discharge, McDevitt alleged in his first amended complaint that he "was taken off" anticoagulant medication. Clerk's Papers at 9. Harborview denied this allegation in its answer. On July 20, 2007, McDevitt went to the emergency room at Northwest Hospital because of significant swelling in his left leg, where he was diagnosed with deep venous thrombosis.

McDevitt filed his lawsuit against Harborview on July 20, 2010. Harborview moved for summary judgment based on the undisputed fact that

McDevitt failed to comply with the 90 day presuit notice requirement of former RCW 7.70.100(1). Harborview requested that McDevitt's lawsuit be dismissed with prejudice. In response, McDevitt argued that our decision in *Waples* invalidated the presuit notice requirement against both private and public defendants. Harborview then argued that we did not have occasion to consider the constitutional validity of the presuit notice requirement as applied to lawsuits against the State. King County Superior Court denied Harborview's motion for summary judgment. Harborview petitioned this court for discretionary review, which was granted. *McDevitt v. Harborview Med. Ctr.*, 171 Wn.2d 1012, 249 P.3d 1029 (2011).

## ANALYSIS

The appropriate standard of review for an order granting or denying summary judgment is de novo, and the appellate court performs the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Additionally, constitutional questions are issues of law and are also reviewed de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

A.  Presuit Notification Requirement

Article II, section 26 of the Washington Constitution provides, "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." This court has historically recognized that the legislature has the constitutionally sanctioned power to alter the common law doctrine of sovereign immunity. *See Billings v. State*, 27 Wash. 288, 291, 67 P. 583 (1902) (recognizing that "only by virtue of [a] statute [passed under article II, section 26] that an action can be maintained against the state"); *Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261 (1980) (stating that "the abolition of sovereign immunity is a matter within the legislature's determination"). The legislature first exercised this constitutional authority to abolish state sovereign immunity in 1961 and subsequently amended its waiver in 1963. Former RCW 4.92.090 (1961). The current version of the statute reads as follows, "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090. Subsequent court decisions read the waiver as also abolishing any derivative immunity previously available to local governmental entities. *Kelso v. City of Tacoma*, 63 Wn.2d 913, 916-19, 390 P.2d 2 (1964); *Evangelical United Brethren Church v. State*, 67 Wn.2d 246,

252, 407 P.2d 440 (1965). The legislature later codified these rulings abolishing the immunity of local government entities in 1967. Former RCW 4.96.010 (1967).

In *Hunter v. North Mason High School*, 85 Wn.2d 810, 818-19, 539 P.2d 845 (1975), we invalidated former RCW 4.96.020 (1967) as a violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Former RCW 4.96.020, which was passed under article II, section 26, required that notice of tort claims against the State be made within 120 days from the date the claims arose. *See Hunter*, 85 Wn.2d at 813, 818-19. Through this statute, the legislature essentially created a truncated statute of limitations of 120 days for tort claims against government entities. *See id.* at 813. Other potential plaintiffs, however, needed only to act against private defendants within the statute of limitations period of three years. *Id.* The court reasoned that this arrangement "produce[d] two classes of tort victims and place[d] a substantial burden on the right to bring an action of one of them." *Id.* Thus, we ruled that former RCW 4.96.020 was unconstitutional on its face. *See id.* at 818-19.

As part of our reasoning in *Hunter*, we also noted that "[t]he unequivocal waiver of sovereign immunity in the 1963 act thus clearly

indicates that 'the [State's] waiver of tort immunity is unbridled by procedural conditions pertaining to the consent to be sued.'" *Id.* at 818 (dictum) (alteration in original) (quoting *Cook v. State*, 83 Wn.2d 599, 613, 521 P.2d 725 (1974) (Utter, J., concurring)). This reasoning was not only unnecessary to the primary equal protection holding of the case, but subsequent decisions from this court have also allowed the legislature to establish certain conditions precedent before suit can be brought against the State. *See Coulter*, 93 Wn.2d at 207 (upholding the presuit requirements of former RCW 4.92.110 for tort damages against the State under an article II, section 26 rationale); *Medina v. Pub. Util. Dist. No. 1 of Benton County*, 147 Wn.2d 303, 312, 53 P.3d 993 (2002) (upholding the presuit notice requirement of former RCW 4.96.020(4) for tort damages against local government entities under an article II, section 26 rationale); *see also* Debra L. Stephens & Bryan P. Harnetiaux, *The Value of Government Tort Liability: Washington State's Journey from Immunity to Accountability*, 30 SEATTLE U. L. REV. 35, 42 (2006) ("The Washington legislature's waiver of sovereign immunity is . . . not without limitations. Rather, the waiver contains some procedural limitations, including provisions in the 1963 act requiring notice of claims, restricting execution on judgments, and providing

for a specific fund from which payment of claims and judgments must be made."). Accordingly, the application of the 90 day presuit notice requirement of RCW 7.70.100(1), the statute at issue, against the State should be treated no differently.

In *Coulter*, which was decided in 1980, we distinguished *Hunter* and specifically noted that our decision in that case was based on an equal protection rationale, rather than on an unequivocal waiver of sovereign immunity. *Coulter*, 93 Wn.2d at 207. Additionally, we cited "the proposition that the abolition of sovereign immunity is a matter within the legislature's determination." *Id.* (citing *Haddenham v. State*, 87 Wn.2d 145, 149, 550 P.2d 9 (1976)). There, former RCW 4.92.110 required that the plaintiff file a claim with the chief fiscal officer of the executive branch, and we reasoned that it is "clear that [the legislature] is providing 'in what manner' suit shall be brought against the State." *Id.* (quoting article II, section 26). Ultimately, we decided that the presuit notification requirement of former RCW 4.92.110 was within the authority of the legislature to enact under article II, section 26.[4] *Id.* The same principle with respect to local

---

[4] Former RCW 4.92.110 (2009), which was the version of the statute in effect at the time McDevitt filed his lawsuit against Harborview, mandated that all claims subject to the filing requirements of former RCW 4.92.100 be presented to the risk management

government entities was also at issue in *Medina*. There, former RCW 4.96.020(4) required a 60 day presuit notice to local government entities in all tort actions. *Medina*, 147 Wn.2d at 308. We upheld this presuit notice requirement as being within the constitutional power of the legislature under article II, section 26.[5] *Id.* at 314-15.

Like *Coulter* and *Medina*, where presuit notice requirements were upheld under article II, section 26, the 90 day presuit notice requirement of former RCW 7.70.100(1) as applied to state defendants should also be upheld under article II, section 26. In 2009, the legislature chose to exempt "claims involving injuries from health care" from the requirements of former RCW 4.92.110 (2006) and former RCW 4.96.020(4) (2006) after it passed

---

division 60 days prior to the commencement of the action. Former RCW 4.92.100(1) (2009), however, exempted all "claims involving injuries from health care" because those claims "are governed solely by the procedures set forth in chapter 7.70 RCW." This health care exemption was incorporated into RCW 4.92.100 in 2009 to avoid inconsistent presuit notice requirements found in former RCW 4.92.110 and former RCW 7.70.100(1) for medical malpractice cases. The current version of RCW 4.92.100, however, has removed the health care exemption.

[5] Former RCW 4.96.020 (2009), which was also the version of the statute in effect at the time McDevitt filed his lawsuit against Harborview, included the same 60 day presuit notice requirement, but it also exempted all "claims involving injuries from health care" because those claims "are governed solely by the procedures set forth in chapter 7.70 RCW." Former RCW 4.96.020(1) (2009). This health care exemption was incorporated into RCW 4.96.020 in 2009 to avoid inconsistent presuit notice requirements found in former RCW 4.96.020(4) (2009) and former RCW 7.70.100(1) for medical malpractice cases. The current version of RCW 4.96.020(1), however, has removed the health care exemption in response to our decision in *Waples* and ongoing litigation in this case.

former RCW 7.70.100(1). The purpose of these exemptions was to avoid inconsistent presuit notice requirements in medical malpractice cases.[6]

There is only a 30 day difference between the presuit notice requirement of former RCW 4.92.110 (2009) and former RCW 4.96.020(4) (2009) and former RCW 7.70.100(1) as applied to state defendants. This difference is de minimis and does not run afoul of the legislature's ability under article II, section 26 to establish conditions precedent before suit can be brought against the State. This is because a 90 day presuit notice requirement is reasonable and does not constitute a substantial burden on the ability of governmental tort victims to obtain relief. *Hall v. Niemer*, 97 Wn.2d 574, 581, 649 P.2d 98 (1982) (noting in light of *Hunter* and *Coulter* that "reasonable procedural burdens may be placed on governmental tort victims as long as such burdens are not substantial and do not constitute a real impediment to relief for governmental tort victims"); *Daggs v. City of Seattle*, 110 Wn.2d 49, 53, 750 P.2d 626 (1988) (clarifying that "[s]o long as the procedural burdens of filing claims with the government are reasonable, the claim laws are valid").

---

[6] Former RCW 4.92.110 (2006) and former RCW 4.96.020(4) (2006) both provided for a 60 day notice requirement in all tort actions against the state or a local governmental entity, and former RCW 7.70.100(1) provides for a 90 day notice requirement in all medical malpractice cases.

Additionally, the 30 day difference does not rise to the level of an equal protection violation because it does not have the effect of truncating the statute of limitations period to the same extent as the statute at issue in *Hunter*. *Hunter*, 85 Wn.2d at 813; *see also Coulter*, 93 Wn.2d at 207 (explaining that if "[t]he plaintiff has a filing time requirement equal to the statutory limitations for bringing an action," a presuit notice requirement "does not involve nor deny equal protection"); *Daggs*, 110 Wn.2d at 53 (clarifying that "[e]qual protection requires that a party have the same amount of time to bring a tort action against the government as he or she would have to bring the action against a private tortfeasor"). For these reasons, the 90 day presuit notice requirement of former RCW 7.70.100(1) as applied to state defendants is more closely comparable to the presuit requirements at issue in *Coulter* and *Medina* than it is to the presuit notice requirement at issue in *Hunter*. As a result, invalidation of the 90 day presuit notification requirement of former RCW 7.70.100(1) as applied to lawsuits against the State would also require invalidation of former RCW 4.92.110 (2009) and former RCW 4.96.020(4) (2009).[7] Thus, we find the 90

---

[7] Former RCW 4.92.110 (2009) and former RCW 4.96.020(4) (2009) both provide for a 60 day notice requirement in all tort actions against the State or a local government entity.

day presuit notice requirement of former RCW 7.70.100(1) constitutional as applied to lawsuits against the State.

B.    Equal Protection Analysis

The equal protection clause of the Fourteenth Amendment to the United States Constitution provides, "[N]or shall any state . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Article I, section 12 of the Washington Constitution also provides, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Statutory classifications that substantially burden indemnification for personal injuries as to some groups but not others are permissible under the equal protection clause to the Fourteenth Amendment only if they are "'reasonable, not arbitrary, and . . . rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" *Hunter*, 85 Wn.2d at 814 (alteration in original) (internal quotation marks omitted) (quoting *F.S. Royster Guano Co. v. Commw. of Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920)). A rational basis form of scrutiny is

used to analyze statutory classifications under both the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution, as long as the statute does not infringe on a fundamental right or create a suspect classification. *See State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). Under rational basis review, the statute will be upheld as long as there is any conceivable set of facts that could provide a rational basis for classification. *Medina*, 147 Wn.2d at 313.

McDevitt mistakenly relies on *Hunter* in arguing that presuit notification requirements violate equal protection. We have consistently upheld presuit notification requirements to state defendants where plaintiffs have challenged that such laws impermissibly discriminate between governmental and nongovernmental defendants.[8] This classification of

---

[8] *See O'Donoghue v. State*, 66 Wn.2d 787, 789-90, 405 P.2d 258 (1965) (indicating that "[c]laim statutes [prescribing the limitations and the manner in which suits must be brought] are mandatory and compliance with them is a condition precedent to recovery"); *Nelson*, 69 Wn.2d at 729 (holding that "the right to sue the state, a county, or other state-created governmental agency must be derived from statutory enactment; and it must be conceded that the state can establish the conditions which must be met before that right can be exercised"); *Coulter*, 93 Wn.2d at 207 (upholding presuit notification requirement of former RCW 4.92.110 (1977)); *Hall*, 97 Wn.2d at 581 (noting in light of *Hunter* and *Coulter* that "reasonable procedural burdens may be placed on governmental tort victims as long as such burdens are not substantial and do not constitute a real impediment to relief for governmental tort victims"); *Daggs*, 110 Wn.2d at 52-53 (explaining that "[c]laims filing laws serve the important function of fostering inexpensive settlement of tort claims," and "[s]o long as the procedural burdens of filing claims with the government are reasonable, the claim laws are valid"); *Medina*, 147 Wn.2d at 314-15 (upholding the 60 day presuit notice requirement of former RCW 4.96.020(4) (1993)).

plaintiffs suing state defendants does not infringe on a fundamental right or create a suspect classification. It is also rationally related to a legitimate government interest because of "the multitude of departments, agencies, officers and employees and their diverse and widespread activities, touching virtually every aspect of life within the state." *Cook*, 83 Wn.2d at 603. The complexity of state operations and the difficulty associated with budgeting and allocating funds for this multitude of departments and agencies provides a legitimate government interest in enacting the presuit notification requirement of former RCW 7.70.100(1). Often, the State receives a quantification of claims against each government agency and allocates funds for recovery of these claims based on the likelihood of recovery in each action. The 90 day presuit notification requirement of former RCW 7.70.100(1) is also rationally related to this legitimate government interest because an advance notice of claims allows the State to make an accurate and timely allocation based on pending claims and use unspent funds for budgeting in other areas of state operations.

Additionally, subsequent cases have indicated that *Hunter*'s reach is limited to legislation that essentially shortens the statute of limitations for suits against state defendants. *Coulter*, 93 Wn.2d at 207 (explaining that if

"[t]he plaintiff has a filing time requirement equal to the statutory limitations for bringing an action," a presuit notice requirement "does not involve nor deny equal protection"); *Daggs*, 110 Wn.2d at 53 (clarifying that "[e]qual protection requires that a party have the same amount of time to bring a tort action against the government as he or she would have to bring the action against a private tortfeasor"). Lastly, we have already held in *Daggs* that "[c]laim filing laws serve the important function of fostering inexpensive settlement of tort claims." *Id.* The fact that former RCW 7.70.100(1) does not actually require parties to engage in settlement negotiations does not negate the statute's impact in advancing the object of the legislation. Thus, we should find that the 90 day presuit notice requirement of former RCW 7.70.100(1) is consistent with the guarantees of equal protection in the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution.

## C.  *Waples v. Yi*

Prior to our decision in *Waples*, we invalidated a certificate of merit statute as a violation of patients' rights to access the court system against a private hospital in *Putman v. Wenatchee Valley Medical Center*, 166 Wn.2d 974, 985, 216 P.3d 374 (2009). There, we recognized that "[t]he

Washington State Constitution does not contain a formal separation of powers clause, but 'the very division of our government into different branches has been presumed throughout our state's history to give rise to a vital separation of powers doctrine.'" *Id.* at 980 (internal quotation marks omitted) (quoting *Brown v. Owen*, 165 Wn.2d 706, 718, 206 P.3d 310 (2009)). The controlling issue in *Putnam* was whether the separation of powers doctrine allowed the legislature to enact a certificate of merit statute, RCW 7.70.150, which conflicted with procedural court rules found in CR 8 and CR 11. *Id.* at 980-81.

RCW 7.70.150 required plaintiffs to submit a certificate of merit by a health care expert, which verified that "'there [was] a reasonable probability that the defendant's conduct did not follow the accepted standard of care,'" before filing a medical malpractice action. *Putman*, 166 Wn.2d at 983 (quoting RCW 7.70.150(3)). CR 8 details our system of notice pleading, and CR 11 states that attorneys do not have to verify pleadings in medical malpractice actions. The majority reasoned that RCW 7.70.150 conflicts with CR 8 because our pleading system requires only "'a short and plain statement of the claim' and a demand for relief." *Id.* (quoting CR 8(a)). According to the majority, the statute also conflicts with CR 11 because it

"requires the attorney to submit additional verification of the pleadings." *Id.* Thus, we invalidated RCW 7.70.150 as being in conflict with court rules (i.e., procedural law). *Id.* at 984-85.

*Waples* gave us occasion to consider a similar statute, former RCW 7.70.100(1), which provided a 90 day presuit notice requirement for all medical malpractice cases. 169 Wn.2d at 160. We held that former RCW 7.70.100(1) irreconcilably conflicts with the commencement requirements of CR 3(a), the conflict was a matter of procedural and not substantive law, and the notice requirement violated separation of powers. *Id.* at 161. "If a statute and a court rule cannot be harmonized, the court rule will generally prevail in procedural matters and the statute in substantive matters." *Id.* CR 3(a) provides the requirements for the commencement of an action, which involves service of a copy of a summons and the complaint or filing of the complaint. *Id.* at 160. The majority reasoned that "[r]equiring notice adds an additional step for commencing a suit to those required by CR 3(a)." *Id.* Accordingly, former RCW 7.70.100(1) could not be harmonized with CR 3(a), and the notice requirement was invalidated. *Id.* at 161.

Although we found the notice requirement of former RCW 7.70.100(1) unconstitutional, we did not have occasion to consider the

constitutionality of the statute, in light of article II, section 26, as applied in cases against state defendants. Additionally, the legislature passed a severability provision, codified under RCW 43.72.911, as part of the Washington Health Services Act of 1993, that reads as follows, "If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." "An as-applied challenge to the constitutional validity of a statute is characterized by a party's allegation that application of the statute in the specific context of the party's actions or intended actions is unconstitutional." *Moore*, 151 Wn.2d at 668-69. "Holding a statute unconstitutional as-applied prohibits future application of the statute in a similar context, but the statute is not totally invalidated." *Id.* at 669. "In contrast, a . . . facial challenge is one where no set of circumstances exists in which the statute, as currently written, can be constitutionally applied."[9] *Id.*

---

[9] Additionally, as explained in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008) (citation omitted):

> Facial challenges . . . run contrary to the fundamental principle of judicial restraint that courts should neither "'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor "formulate a rule of constitutional law broader than is required by the

Our decision in *Waples* was a dispute between private parties and did not involve a state defendant. Whereas the defendants in *Waples* were private individuals and private corporations, *Waples*, 169 Wn.2d at 156-57, we have previously determined that Harborview Medical Center is the equivalent of a state agency and arm of the state, *Hontz v. State*, 105 Wn.2d 302, 310, 714 P.2d 1176 (1986). As a result, there were no facts in *Waples* to address the issue of whether article II, section 26, and the legislature's waiver of sovereign immunity, permitted the legislature to establish conditions precedent before suit can be brought against the State. None of our relevant case law regarding article II, section 26 or the State's waiver of sovereign immunity was even addressed in the *Waples* opinion. Additionally, facial invalidation of the presuit notice requirement in former RCW 7.70.100(1) would ignore the severability provision passed by the

---

precise facts to which it is to be applied." *Ashwander v. TVA*, 297 U.S. 288, 346-47[, 56 S. Ct. 466, 80 L. Ed. 688] (1936) (Brandeis, J., concurring) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S. Ct. 352, 28 L. Ed. 899 (1885)). Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 329[, 126 S. Ct. 961, 163 L. Ed. 2d 812] (2006) (quoting *Regan v. Time, Inc.*, 468 U.S. 641, 652[, 104 S. Ct. 3262, 82 L. Ed. 2d 487] (1984) (plurality opinion)).

legislature as part of the Washington Health Services Act of 1993.[10] This severability clause specifically treats "the application of [former RCW 7.70.100(1)] to other persons or circumstances" as valid if application to other persons or circumstances is invalidated. RCW 43.72.911. Thus, *Waples* was an as-applied invalidation of the 90 day presuit notice requirement of former RCW 7.70.100(1).

D.    Prospective-Only Application

A court may give its decisions prospective-only application to avoid substantially inequitable results. We recognize that in Washington, a new decision of law generally applies retroactively, affecting both the litigants before the court as well as subsequent cases. *Lunsford v. Saberhagen*, 166 Wn.2d 264, 271, 208 P.3d 1092 (2009). However, in rare instances we may choose to give a decision prospective-only application. *Id.* at 270-71. Although we have used it inconsistently, this court has adopted the United States Supreme Court's three-part test in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 296 (1971) for determining whether a new

---

[10] The 90 day presuit notice requirement of former RCW 7.70.100(1) was originally passed by the legislature in 2006 as an amendment to the 1993 health services act. LAWS OF 2006, ch. 314, § 1. In addition, the legislature recently removed the health care exemptions of former RCW 4.92.100(1) (2009) and former RCW 4.96.020(1) (2009), which evidences its intent to subject plaintiffs suing state health care providers to similar notification requirements as those found in former RCW 7.70.100(1).

decision should receive prospective-only application. *Lunsford*, 166 Wn.2d at 272-73 (citing *Taskett v. KING Broad. Co.*, 86 Wn.2d 439, 448, 546 P.2d 81 (1976)). If the following three conditions are met, we may depart from the presumption of retroactivity: "(1) the decision established a new rule of law that either overruled clear precedent upon which the parties relied or was not clearly foreshadowed, (2) retroactive application would tend to impede the policy objectives of the new rule, and (3) retroactive application would produce a substantially inequitable result." *Id.* (footnote omitted) (citing *Chevron Oil*, 404 U.S. at 106-07).

Under the Chevron Oil test, this case merits prospective-only application. (1) Our decision in *Waples*, which did not involve the state, declared former RCW 7.70.100 unconstitutional. *See* 169 Wn.2d at 155 ("[T]he notice requirement of [former] RCW 7.70.100(1) is unconstitutional because it violates the separation of powers."). Today's decision, by recognizing article II, section 26, clarifies that holding in a manner that McDevitt did not foresee. (2) Retroactive application of this decision's holding, which would apply chapter 7.70 RCW to McDevitt, would impede the legislature's policy objectives as embodied in later adopted provisions. Indeed, during the pendency of this appeal, the legislature amended RCW

4.92.100(1) to remove the reference to chapter 7.70 RCW. *See* LAWS OF 2012, ch. 250, § 1. Since the effective date of that statutory change (June 7, 2012), claims must be made under RCW 4.92.100, not under chapter 7.70 RCW.[11] LAWS OF 2013, ch. 82, § 1. (3) Finally, McDevitt relied on our unqualified language in *Waples* when he did not file notice as prescribed in former RCW 7.70.100(1). Nullifying his cause of action now would, in effect, punish his reliance on our recent decision: a substantially inequitable outcome.[12]

## CONCLUSION

We hold that the 90 day presuit notice requirement of former RCW 7.70.100(1) as applied to the State is a constitutional application of law under article II, section 26 of the Washington Constitution. Additionally, we find that the 90 day presuit notice requirement of former RCW 7.70.100(1) is not a violation of equal protection. Lastly, we hold that our decision in *Waples* was an as-applied invalidation of former RCW 7.70.100(1). However, in order to avoid a substantially inequitable result, we give these holdings prospective-only application. The King County Superior Court's

---

[11] Moreover, the legislature recently completely excised the 90 day requirement from former RCW 7.70.100.

[12] This decision expresses no opinion as to the merits of McDevitt's underlying claims.

denial of Harborview Medical Center's motion for summary judgment is accordingly affirmed.

WE CONCUR:

No. 85367-3

CHAMBERS, J.* (concurring in result only) — While I concur in result, the lead opinion is wrong in its statutory analysis, ignores the clear direction of the legislature to avoid inconsistent presuit notice requirements, fails to treat similar government and private entities the same, and reaches an absurd result. It confuses what the legislature could constitutionally do with what the legislature did do in the 2009 medical malpractice reform legislation. The lead opinion acknowledges that "[t]he purpose of these exemptions was to avoid inconsistent presuit notice requirements in medical malpractice cases" (referring to former RCW 4.92.110 (2006) and former RCW 4.96.020(4) (2006)), a statement with which I agree. Lead opinion at 10. But the lead opinion's result is just the opposite. Under the lead opinion's reasoning, government health care providers are given the benefit of a presuit notice requirement that other health care providers are not, and government health care providers were given the benefit of a more generous presuit notice requirement than any other government entity was at the time. This is an absurd result. Clearly, as recent legislative action amply shows, it is not what our legislature intended either. LAWS OF 2013, ch. 82; LAWS OF 2012, ch. 250.

At the time this case was filed, all other government entities were entitled to 60 days' notice of a claim before a suit could be filed. This presuit notice requirement gives public agencies the opportunity to promptly settle meritorious

---

*Justice Tom Chambers is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

claims. This uniformity is important to maintain an even playing field with understandable rules. However, under the lead opinion's strained logic, a portion of a statute we have previously held to be unconstitutional is resuscitated to create a very special and privileged group of government health care providers who enjoyed 90 days of presuit notice. To explain why government health care providers, and only government health care providers, are entitled to 30 more days, the lead opinion simply says, "This difference is de minimis." Lead opinion at 10. It was either the intent of the legislature to create an ultraspecial class or it was not; when discerning the intent of the legislature, the "de minimis" standard is not an analytical standard we use. If we are to have inconsistent presuit notice requirements among government agencies, the legislature, not this court, should create them.

The lead opinion has confused what the legislature could do under article II, section 26 of our state constitution with what our legislature intended to do in its most recent attempt at medical malpractice reform. The lead opinion offers no rational basis for giving government health care providers a very special 90-day preclaim filing requirement, when all other state and local entities are entitled to only a 60-day preclaim filing period, and private health care providers are entitled to none. Our legislature clearly does not think that is fair; it has since amended the law to give government hospitals the same claims period as other government agencies. LAWS OF 2012, ch. 250; *see also* LAWS OF 2013, ch. 82. The lead opinion's result leaves us not with legislation that was painstakingly drafted after deep discussion with the stakeholders. At best, it results in law that is simply an accident. At worst, it results in law that is in clear derogation of the legislature's

2

intent, either for consistent preclaim periods among government agencies or for malpractice reform that treats governmental and private health care providers the same.

I believe we should begin, as we did the first time this statute was before us, with the principle that the law applies equally to all. "'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.'" *Putman v. Wenatchee Valley Med. Ctr.*, 166 Wn.2d 974, 979, 216 P.3d 374 (2009) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803)). This is not merely rhetorical. The very language of the repudiation of sovereign immunity reflects our legislature's embrace of that principle: "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090. The 2009 legislature went further with respect to health care providers. The general provision establishing the preclaim notice requirement, former RCW 4.92.100 (2009), was amended to exclude health care injuries, providing more equal treatment for plaintiffs and defendants alike. Former RCW 4.92.100(1) ("Claims involving injuries from health care are governed solely by the procedures set forth in chapter 7.70 RCW and are exempt from this chapter."). This change again expressed the legislature's intent at the time that public health care providers would be treated exactly like private health care providers. Thus, RCW 4.92.090 and former RCW 7.70.100 (2006) are in absolute harmony with the legislature's

intent to treat government and private entities (in this case, health care providers) the same.

I recognize that this does not end our inquiry. As the lead opinion properly recognizes, under our constitution, the legislature has the power to "direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. I agree that the legislature may discriminate and provide special protections for state and local governments within constitutional limits.[1]

But having the power to grant preferential treatment to yourself is not the same as having exercised that power. If the legislature wants to carve out an exception to its admonition that it was to be treated to the same extent as private persons and corporations, it can do so.[2] If the legislature wants to act under article

---

[1] We have held that the State's power to discriminate is not unfettered. In *Hunter v. North Mason High School*, 85 Wn.2d 810, 818-19, 539 P.2d 845 (1975), Justice Utter wrote that

> we cannot uphold nonclaim statutes simply because they serve to protect the
> public treasury. Absent that justification, there is no basis, substantial or even
> rational, on which their discrimination between governmental plaintiffs and others
> can be supported. They thus cannot stand under the equal protection clause of the
> Fourteenth Amendment or Const. art 1, § 12.

(Footnote omitted.) I strongly object to the lead opinion's dismissive labeling of language in *Hunter* as dictum. We are not a federal court; we are not limited by the federal constitution's "cases" and "controversies" requirement that gave rise to its restrictive "dicta" jurisprudence. U.S. CONST. art. III, § 2; *see Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 319 n.32, 174 P.3d 1142 (2007) (Chambers, J., concurring). *See generally* Michael C. Dorf, *Dicta and Article III*, 142 U. PA. L. REV. 1997 (1994). Reasoning in a Washington State Supreme Court opinion does not become "dictum" merely because a later court finds it to be inconvenient.

[2] Again, the legislature must comply with other constitutional principles. We must not forget that exercises of article II, section 26 power are subject to other constitutional constraints. *ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 619, 268 P.3d 929 (2012); *Hunter*, 85 Wn.2d at 818-19. It may be that a well-drawn statute would not run afoul of the equal protection principles laid down in *Hunter*. The lead opinion is certainly correct that

II, section 26 to bestow upon public health care providers special treatment or a competitive advantage over private hospitals, the legislature should take that action, not this court. Given the competing interest between private and public health care providers, this should be debated in the legislature and not imposed by this court.[3]

Today, the court writes a statute that our legislature did not consider and could not have intended. Article II, section 26 does not vest this court with the authority to legislate.

However, because I do agree that the lead opinion's decision should be applied prospectively only, I concur in the result today. This is a unique case. In *Waples v. Yi*, 169 Wn.2d 152, 161, 234 P.3d 187 (2010), this court held the presuit notice requirement of former RCW 7.70.100(1) was unconstitutional on its face.

---

this court has upheld other claims periods that favor the State and its subdivisions. *See, e.g., Medina v. Pub. Util Dist. No. 1. of Benton County*, 147 Wn.2d 303, 313, 53 P.3d 993 (2002) (upholding 60-day waiting period); *Hall v. Niemer*, 97 Wn.2d 574, 581, 649 P.2d 98 (1982) (upholding claim filing condition precedent that placed "reasonable procedural burden [that was] not substantial and [did] not constitute a real impediment to relief"); *Coulter v. State*, 93 Wn.2d 205, 207, 608 P.2d 261 (1980) (upholding claim filing statute that did not reduce the statute of limitations). But in those cases, we were faced with statutes where the legislature deliberately and publicly exercised its article II, section 26 power to "'direct by law, in what manner, and in what courts, suits may be brought against the state.'" *Hall*, 97 Wn.2d at 581 (quoting CONST. art. II, § 26). We were not faced with a statute that was transformed from one that benefited all categories of providers equally to benefiting the State only. A statute that draws purely arbitrary categories violates equal protection. *Medina*, 147 Wn.2d at 314 (citing *State v. Thorne*, 129 Wn.2d 736, 771, 921 P.2d 514 (1996)).

[3] I also respectfully disagree with the lead opinion's equal protection analysis. A statute that draws purely arbitrary categories violates equal protection. *See, e.g., Medina*, 147 Wn.2d 314 (citing *Thorne*, 129 Wn.2d at 771). Due to this court's holding today, former RCW 7.70.100 has become purely arbitrary, at least in relation to the statute the legislature thought it was drafting. The legislature's constitutional authority to direct how the State may be sued is subject to the equal protection clause, and equal protection is offended when power is wielded in an arbitrary manner. *See generally id.* at 324-29 (Chambers, J., dissenting).

*McDevitt (Glen A.) v. Harborview Medical Center, et al.* (Chambers, J.P.T., concurring in result only)

*Waples* used sweeping language, not the language of an "as applied" holding. The plaintiff, indeed, the entire world, was entitled to rely upon this court's holding. The lead opinion has now seen fit to exempt government health care defendants from that rule. Under these exceptional circumstances, I agree the holding should be prospective only.

---

Chambers, JPT

Stephen J.

González, J.

No. 85367-3

FAIRHURST, J. (concurring in part and dissenting in part)—I agree with the lead opinion that article II, section 26 of the Washington State Constitution empowers the legislature to require a 90 day presuit notification period before filing suit against the State or any of its subdivisions. I wholly join the lead opinion's holding that the presuit notice provision in former RCW 7.70.100(1) (2006) is constitutional. Lead opinion at 2. On the issue of prospectivity, which is the only issue that we granted reconsideration, I find the analysis and ultimate determination unsatisfactory.

In *Waples v. Yi*, 169 Wn.2d 152, 161, 234 P.3d 187 (2010), we found the presuit notice requirement in former RCW 7.70.100(1) unconstitutional. There is no discussion or distinction made in the *Waples* majority between private and governmental defendants. The *Waples* dissent mentions governmental defendants, but only as an example of how presuit notice requirements have been adopted and upheld in other contexts. *Id.* at 165 (J.M. Johnson, J., dissenting).

Given Glen McDevitt's interpretation of *Waples*, he thought former RCW 7.70.100(1) no longer applied and he did not need to, nor did he, file a presuit notice. The State thought it continued to apply and raised McDevitt's failure to file as a defense. In this case, we have decided substantively that *Waples* did not invalidate the presuit notice requirement in suits against governmental defendants; therefore, McDevitt should have filed a presuit notice. Before our decision, there was nothing that said the presuit notice requirement was not required in suits against governmental defendants.

It is hard to imagine a clearer violation of the separation of powers doctrine than the court's determination that its decision will operate prospectively only. The court's decision has not changed the law. There is no principle that says until the court decides a statute is effective, it is not. The statutory notice provision has never been declared unconstitutional insofar as suits against the government are concerned; at all times, the statute's notice requirement was constitutional when applied in medical malpractice actions against the government.[1]

Nonetheless, a majority of the court concludes that the statutory provision will be completely inoperable for a period of time—beginning when *Waples* was

---

[1] The statute was constitutionally valid when applied to the government until the legislature's amendment in 2013 that removed the 90 day presuit notice requirement in its entirety. LAWS OF 2013, ch. 82, § 1 (effective July 28, 2013).

2

filed and ending when this case is filed—despite the fact that, as applied, the statute was at all times constitutional and a legitimate exercise of the legislature's power under article II, sections 1 and 26 of the Washington State Constitution.

Given this situation, I do not know how we can give prospective only relief. We are not changing a procedural rule for construing the statute or for determining its constitutionality. We cannot change or invalidate a substantive legislative enactment if it is constitutional. Nor can we suspend a valid statute. Accordingly, there is no room for any debate about prospective or retroactive application of our decision. I respectfully dissent from the prospective application portion of the lead opinion and would reverse the trial court.[2]

---

[2]McDevitt argues that the State at oral argument conceded prospective application. The State's counsel, in response to a question about prospective application, emphasized that Harborview's main concern was an opinion affirming the constitutionality of former RCW 7.70.100(1) as applied to state defendants, stating:

> This situation is always difficult. I think historically the way the court has approached it is that . . . the litigant before the court gets the benefit or the burden of the decision . . . and it applies prospectively from that point. Obviously our interest is in . . . the larger matter.

Wash. Supreme Court oral argument, *McDevitt v. Harborview Med. Ctr.*, No. 85367-3 (Jan. 12, 2012), at 39 min., 8 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. While acknowledging the State's greater interest in the long term rather than the immediate case, he ended by asking us to reverse the trial court. I do not think his statement can be deemed a concession.

Fairhurst, J.

Madsen, C.J.