# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

TANYA I. STOCK,

Appellant,

v.

HARBORVIEW MEDICAL CENTER; UNIVERSITY OF WASHINGTON/UW PHYSICIANS, ET AL.; AND THOSE AS LISTED AS 1 THROUGH 11,

Respondents.

No. 71768-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 8, 2015

2015 JUN -8 AM 9:10

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

LEACH, J. — Tanya Stock appeals the trial court's summary dismissal of her professional negligence claims against Harborview Medical Center, University of Washington/UW Physicians, and her individual care providers (collectively Harborview). Stock contends that she provided adequate notice of her lawsuit against the State and that she did not need to present expert testimony to oppose Harborview's summary judgment motion. Because Stock did not provide the presuit notice required by RCW 4.92.100 and because she did not support her claims with required expert testimony, the trial court did not err in granting summary judgment to Harborview. We affirm.

## Background

Tanya Stock drove her car into a pole at around midnight on February 8, 2012. A witness found her unconscious behind the wheel and called 911.

Emergency medical technician responders arrived at the scene, intubated her, and transported her to Harborview Medical Center.

Stock had a small right intraventricular hemorrhage and a blood alcohol concentration of 0.21. Hospital staff extubated her the same day. Physicians took CT (computerized tomography) scans of Stock's brain, determined that her hemorrhage was stable, and did not detect other injuries. The emergency department then transferred her to the intensive care unit (ICU) where specialists evaluated her, including psychiatrists in the neurosurgery department. A social worker attempted to find Stock's next of kin by leaving messages with several of her contacts on Facebook and her professional web site.

On February 11, 2012, the neurosurgery department cleared Stock, and the hospital discharged her. The hospital provided her with paperwork instructing her to follow up with her primary care provider within the week and to obtain a CT scan before she returned to the Harborview neurosurgery clinic within two weeks for a follow-up visit. When Harborview did not hear from Stock, it unsuccessfully attempted to contact her.

In her declaration in support of her response to defendant's motion for summary judgment, Stock alleged several additional facts that she claimed deviate from an acceptable standard of care. She claims that one nurse improperly administered midazolam while Stock was in a coma and gave blood taken from Stock to a police officer without a warrant or Stock's consent. She asserts that the doctors that saw her on intake failed to address her treatment

needs and did not attend to her afterward. She recounted that a social worker required her to sign a power of attorney when she was unstable and not in a position to make a decision. She asserts that her Harborview primary care physician discharged her without ever interacting with her or the doctors that did attend to her. She claims Harborview released her to an unidentified stranger when she was deteriorating and still wearing medical waste.

On November 13, 2012, Stock sent a letter to Washington State's Office of Risk Management and to University of Washington Medicine, officially notifying them that she intended to file a claim for "negligent care by Harborview Medical Center/UW Physicians." She typed but did not sign her name to the letter.

On February 15, 2013, Stock filed a lawsuit against Harborview and seven physician defendants, alleging medical negligence and lack of informed consent. The complaint included allegations that social workers released confidential medical information to Stock's Facebook and phone contacts in an attempt to locate Stock's next of kin; that due to overcrowding, physicians transferred her to the children's ICU, where she did not receive proper care; that her attending physician never met with her; that physicians who saw her did not treat additional injuries; that neurophysicians misdiagnosed Stock and prescribed her medication that contributed to her decline; that they failed to provide her with informed consent when she signed her release documents; and that they failed to follow protocol when they released her. In Harborview's answer, it alleged as an affirmative defense Stock's failure to comply with presuit notice requirements of

chapter 4.92 RCW. On September 9, 2013, Stock submitted a standard tort claim form to the Office of Risk Management. By the January 6, 2014, deadline for parties to identify primary witnesses, Stock listed only the defendant physicians as her primary witnesses.

On February 27, 2014, Harborview filed a summary judgment motion based on Stock's failure to provide presuit notice and lack of expert testimony to support her claims. The trial court granted summary judgment on these grounds.

Stock appeals.

### Analysis

Stock argues that the trial court erred when it granted Harborview summary judgment. We review a trial court's summary judgment order de novo, looking to see if there are no remaining genuine issues of material fact, thus entitling the moving party to summary judgment.[1] We view all evidence in the light most favorable to the nonmoving party.[2]

Stock argues that she gave sufficient presuit notice to Harborview. Harborview responds that chapter 4.92 RCW applies and that Stock failed to follow the procedures required to sue the State for medical malpractice. RCW 4.92.100 requires a claimant filing suit against the State to file a standard tort claim form with the Office of Risk Management. A party must do so at least 60

---

[1] Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011) (quoting CR 56(c)).

[2] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

days before commencement of a lawsuit.[3]    Harborview argues that Stock's

November 13, 2012, letter failed to adequately comply with the requirements

listed in the statute and that her September 9, 2013, standard tort form failed to

give proper notice because Stock filed it after she filed her lawsuit.

Requirements for presuit notice for medical malpractice claims against the

State have changed several times.  In 2006, the legislature added a provision to

RCW 7.70.100 requiring plaintiffs to give defendants a 90-day notice of their

intent to file a medical malpractice suit.[4]  In 2009, the legislature amended RCW

4.92.100 to include a medical malpractice exemption, requiring plaintiffs with

medical malpractice cases against the State to give presuit notice under RCW

7.70.100.[5]    The    legislature    thus    avoided    inconsistent    presuit    notice

requirements.[6]  But in 2010, Washington's Supreme Court held in Waples v. Yi[7]

that the 90-day presuit notice required by RCW 7.70.100(1) was a procedural

rule that conflicted with notice requirements in CR 3(a) and was thus

unconstitutional.  Before Stock filed suit, the legislature amended RCW 4.92.100

to remove the medical malpractice exemption, effective June 7, 2012.[8]  This

restored presuit notice requirements in RCW 4.92.100 for medical malpractice

suits against the State.[9]  Then, in McDevitt v. Harborview Medical Center,[10]

---

[3] RCW 4.92.110.
[4] LAWS OF 2006, ch. 8 § 314.
[5] LAWS OF 2009, ch. 433 § 2.
[6] McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 68, 316 P.3d 469 (2013).
[7] 169 Wn.2d 152, 159-61, 234 P.3d 187 (2010).
[8] LAWS OF 2012, ch. 250 § 1.
[9] McDevitt, 179 Wn.2d at 76.

decided on November 14, 2013, the court held that for medical malpractice claims against the State, under article II, section 26 of the Washington Constitution,[11] the 90-day presuit notice under former RCW 7.70.100 (2006) was constitutional. The court made prospective only the application of its decision, requiring claimants to follow presuit procedures for medical malpractice claims against the State under RCW 4.92.100 if filed before its decision and under RCW 7.70.100 if filed after the decision.[12]

Thus, because Stock's November 13, 2012, letter, February 15, 2013, lawsuit, and her September 9, 2013, standard tort claim form all occurred between the legislature's 2012 amendment to RCW 4.92.100 and the court's decision in McDevitt, Stock had to follow presuit notice procedures of RCW 4.92.100. Claimants must substantially comply with the statute's requirements.[13] Stock was required to include in her presuit notice a description of her injury or damage, when and where it occurred, a list of names and contact information for all those involved if known, a statement of the amount of damages claimed, and a statement of the claimant's residence at the time of the claim and the time the claim arose.[14] Also, she had to sign the claim.[15] Stock argues that she initially complied with RCW 7.70.100 and did file and serve a verified standard tort claim

---

[10] 179 Wn.2d 59, 68, 316 P.3d 469 (2013).

[11] "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state."

[12] McDevitt, 179 Wn.2d at 75-76.

[13] RCW 4.92.100(1)(a).

[14] See RCW 4.92.100(1)(a).

[15] See RCW 4.92.100(1)(b).

form when Harborview raised the issue of noncompliance. But because Stock's letter did not substantially comply with RCW 4.92.100 and because she filed the standard tort claim form after she filed suit, she failed to properly give the State notice of her lawsuit.

Stock next argues that the trial court erred when it dismissed her claims because she did not present expert testimony to support her professional negligence claims. Stock argues that she did not need expert testimony to establish a medical malpractice claim for patient abandonment and if she did, she could elicit such testimony through cross-examination of the physician defendants at trial.

Harborview contends that Stock waived her "abandonment" claim because she did not raise it in the trial court.[16] But Stock's complaint alleges that she received inadequate and improper care and that Harborview "released [Stock] prematurely and not according to protocol." Thus, she sufficiently raised the issue below.

To bring a professional negligence claim against Harborview for her premature discharge from the hospital, Stock must prove that the hospital or its health care providers failed to meet an accepted standard of care.[17] Normally a physician's expert testimony is necessary in medical malpractice cases to establish a standard of care and defeat a defendant's summary judgment

---

[16] See RAP 2.5(a).
[17] RCW 7.70.030(1).

motion.[18] Only where "want of skill or lack of care is so apparent as to be within the comprehension of laymen [requiring] only common knowledge and experience to understand and judge it" will a court permit a plaintiff to fail to provide expert testimony on the acceptable standard of care in a medical malpractice case.[19]

Stock cites Meiselman v. Crown Heights Hospital[20] as authority that she did not need an expert because her condition could have suggested to a jury that Harborview had improperly discharged her. In Meiselman, the court found that because of the increasingly bad condition of a patient's legs after the hospital discharged him to a doctor without experience, the plaintiff presented sufficient evidence to establish a prima facie case for willful abandonment without expert testimony.[21] Stock cites a Florida case where the court held a hospital responsible for wrongful discharge of its patient where evidence showed that the boy was "violently ill" when the hospital discharged him and obviously injured by the hospital's tortious conduct.[22] Stock fails to assert any injury sufficient to establish for a layperson or a jury that Harborview deviated from an acceptable standard of care when it evaluated Stock and discharged her from the hospital. Stock states in her declaration that at her release she wore medical waste in the

---

[18] Young, 112 Wn.2d at 228.
[19] Young, 112 Wn.2d at 228-29 (internal quotation marks omitted) (quoting Hart v. Steele, 416 S.W.2d 927, 932 (Mo. 1967)).
[20] 285 N.Y. 389, 396, 34 N.E.2d 367 (1941).
[21] Meiselman, 285 N.Y. at 396.
[22] Le Juene Rd. Hosp., Inc. v. Watson, 171 So. 2d 202, 203-04 (Fla. Dist. Ct. App. 1965).

form of intravenous inserts and that Harborview released her to "person(s) unknown and misinformed [as] to the nature of Ms. Stock's injuries and the care needed and required." But her medical discharge summary indicated that she was in "good" condition, and Stock's grievances do not amount to apparently tortious conduct on the part of Harborview. As the trial court stated, Stock's "contention that [her discharge from the hospital] is something that would not ordinarily happen in the absence of negligence isn't one I can see in this case." In the absence of readily apparent evidence showing noncompliance with an applicable standard of care, Stock's medical malpractice claim required expert testimony.

Stock argues that instead of providing expert testimony in opposition to Harborview's motion, she could have established Harborview's deviation from the standard of care through cross-examination of the physicians who cared for her. However, as Harborview argues, Stock cannot rely on her ability to cross-examine physicians at trial where she failed to establish, through competent evidence, that their testimony raised a genuine issue of material fact.[23] When a party files a motion for summary judgment, the nonmoving party must present affidavits, depositions, or other evidence to create a genuine issue of material fact.[24] Stock failed to provide the trial court with affidavits or depositions from

---

[23] See Am. Express Centurion Bank v. Stratman, 172 Wn. App. 667, 675-76, 292 P.3d 128 (2012).

[24] CR 56(e); Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011).

any of the physicians she planned to cross-examine. Stock argues that the parties agreed to forgo discovery until they resolved the issue of notice. But this does not absolve her of the requirement that as the nonmoving party on summary judgment, she must come forward with evidence to show that a genuine issue of material facts exists. And she did not produce any evidence demonstrating this.

Conclusion

We conclude that because Stock failed to provide proper presuit notice under RCW 4.92.100 and because on summary judgment she failed to present expert testimony evidence showing that Harborview deviated from an acceptable standard of care, she cannot show a genuine issue of material fact existed. Thus, the trial court did not err when it granted Harborview's summary judgment motion. We affirm.

_Leach, J._

WE CONCUR:

_Trickey, J_          _Dwyer, J._