[No. 6712.   Decided July 8, 1907.]

WILLIAM SCHULTZ, *Respondent,* v. SIMMONS FUR COMPANY, *Appellant.*[1]

CONTRACTS—AMBIGUITY—PAROL EVIDENCE TO EXPLAIN—CONSTRUCTION—QUESTION FOR JURY. A letter offering employment to a fur cutter at $25 a week for the "busy season" and $20 for the "dull season" is ambiguous, authorizing the admission of oral evidence to explain the terms as used in the fur trade, making the interpretation of the contract a question for the jury.

SAME—TERMS OF CONTRACT. A letter offering employment to a fur cutter, dated October 28, 1905, stating that "I have no doubt that it will be all year round" and ending, "I will give you $25 a week for six months for the busy season and give you $20 a week for the dull season," is properly construed by the jury to be a contract of employment for one year, when it is explained by the oral testimony that the six months of the busy season were the following Novem-

[1]Reported in 90 Pac. 917.

ber and December of that year, and January, August, September and October of the next year, since in no other way could effect be given to the promise to pay $25 a week for six months.

CONTRACTS—MUTUALITY—ACCEPTANCE. A letter offering employment for one year is a complete contract as soon as accepted, and there is no lack of mutuality after beginning performance.

APPEAL—REVIEW—VERDICTS. A verdict upon conflicting evidence will not be disturbed on appeal where there is sufficient evidence to sustain it.

TRIAL—MISCONDUCT OF JURY. A verdict should not be disturbed on account of misconduct of the jury, alleged by two of the jurors, where the same is contradicted by affidavits of seven other jurors.

JUDGMENT—ENTRY—APPEAL—HARMLESS ERROR. Failure to enter judgment against appellant immediately after the rendition of a verdict, and that it was not signed until after denial of a new trial, are mere irregularities, and harmless error when no prejudice appears.

Appeal from a judgment of the superior court for King county, Tallman, J., entered November 27, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for breach of a contract of employment. Affirmed.

*J. H. Allen* and *James A. Dougan,* for appellant.

*Cutts & Dorety,* for respondent.

HADLEY, C. J.—This is an action to recover damages for breach of contract. The plaintiff alleged in his complaint that the defendant agreed with him that, if he would remove to Seattle and enter defendant's employment, the latter would employ him for a period of one year as a fur cutter, at a salary of $25 per week during the months of November and December, 1905, and the months of January, August, September, and October, 1906, and at a salary of $20 a week during the months from February to July inclusive, in 1906; that in reliance upon such promise and in consideration thereof, the plaintiff immediately left Portland, Oregon, and removed to Seattle, and entered the employment of defendant about November 1, 1905; that the defendant had retained

plaintiff in said employment and paid him the above-specified salary during the months of November and December, 1905, and until January 27, 1906, when defendant refused to employ him any longer. He alleges that he has done all things necessary to entitle him to demand performance of said contract and to bring this action; that he has demanded that defendant employ him for the balance of said contract time, which demand was refused. He alleges impossibility to procure other employment, and fixes his damages by reason of defendant's alleged breach of its contract at $845. The answer admits that defendant employed plaintiff, and alleges that the agreement was to pay him $25 weekly during the busy season and $20 weekly during the dull season of the fur trade, but denies that the employment was for a year. It is further alleged that the plaintiff was an incompetent workman; that he was intemperate and irregular in his habits, and that the defendant could not depend upon him to be present when his services were required by his employment; that the defendant would have discharged him but for the fact that plaintiff himself abandoned his said employment of his own accord. These affirmative allegations were in the main denied by the reply. Upon the above issues the cause was tried before a jury, and a verdict was returned for plaintiff in the sum of $615. Judgment was entered for the amount. Defendant's motion for new trial was denied, and it has appealed.

Many specific assignments of error are set forth in the brief, which involve the single matter of the nature of the agreement between the parties. The chief propositions discussed by appellant are stated in its argument in its brief as follows:

"Was there any contract between the plaintiff and the defendant? If there was a contract, was it such a contract as was enforceable against the defendant? If there was an enforceable contract, was it such a contract as should have been in writing to satisfy the requirements of the statute of frauds? And if the contract should have been in writing to satisfy the statute, should an oral statement have been admitted to ex-

plain, alter or add to the terms of the written contract, if any there was?"

These questions arose under the denial of appellant's motion for a nonsuit and its challenge to the sufficiency of the evidence. Under our views of the case, we need not argue all the points discussed in the briefs, for the reason that we think there was a written contract between the parties. Respondent, in answer to interrogatories propounded to him before the trial, answered that he based his right to recover upon a letter from appellant, of which the following is a copy:

                              "Seattle, Wash., Oct. 28, 1905.
"Wm. Schultz,   Dear Sir.—I received your letter and was very sorry to hear that you were sick, and hoping this letter will find you in the best of health. In reference to work, I wish to state that Glandzman cannot do the work satisfactory for me, and as you have written to me before that you do not like your position, I wish you would come up and work for me rather than work elsewhere. As I have to have a man to do all my work, I have no doubt but what it will be all year round. I have told you when you were here, that no doubt that there was a better opening here than elsewhere. I hope you will make up your mind and come at once. In reference to the wages I will give you $25.00 a week for six months for the busy season, and give you $20.00 a week for the dull season. Hoping to see you Monday morning here I remain,                              Yours,
                              "Simmons Fur Co."

The letter was introduced in evidence at the trial, and appellant contends that it does not amount to a contract for want of mutuality, and moreover that it is indefinite in its terms as to the time of employment. It is also urged that the court erred in admitting oral evidence touching the contract, inasmuch as respondent claims that the contract was in writing. Respondent, upon the other hand, takes the position that by his acceptance of the terms stated in the letter by his entering upon the performance thereof, the contract became mutual and both parties became bound thereunder. He also contends that the contract is sufficiently clear upon its face

to show an employment for one year, and that it should have been so construed by the court; but further contends that, if it is ambiguous or doubtful, then the oral testimony was properly admitted, not to vary the terms of the written contract but to explain and make clear wherein it is ambiguous. We adopt the latter view in harmony with the trial court's ruling, and we believe there was sufficient ambiguity of expression in the use of certain words and terms to make the meaning of the contract doubtful, at least to one not familiar with the customs of the branch of the fur trade concerned.

Respondent argues that the expression "I have no doubt but what it will be all year round," must be literally construed as meaning the absence of *all* doubt; therefore a certainty, an absolute agreement for one year. It must be conceded that a strict literal reading would seem to indicate such meaning, but appellant argues that the expression contains within itself a reservation of *some* doubt, and such may be true when viewed not so much with reference to the actual words employed as in respect to a provincial or possibly general usage and understanding of the words in similar connections. In view of the latter probability, it became necessary to look to other parts of the writing for further light upon the subject of the duration of the contract. Accordingly we find the statement "I will give you $25 a week for six months for the busy season, and give you $20 a week for the dull season." The terms "busy season" and "dull season," unexplained as they are in the contract, are ambiguous to those unacquainted with the fur trade. Oral testimony was therefore proper to explain their meaning. The testimony showed that what is called the "busy season" begins on September 1 each year, and extends continuously through the following six months, ending on March 1. The dull season covers the six months from March 1 to September 1. The letter which is the basis of the contract between the parties bears date October 28, 1905. It will therefore be observed that but about four months of the then current busy season remained.

The language of the letter, however, included an uncondi-
tional promise to pay $25 a week "for six months" for the
busy season.   It will be seen that such six months of busy
season necessarily included the November, December, Janu-
ary, and February of the then current busy season, and the
September and October of the following busy season.   Be-
tween the two came the six months of dull season, during
which, the letter says, the appellant will pay $20 a week.
Thus, in the light of the explanatory testimony, we think it
was proper to submit to the jury whether, from all the lan-
guage emloyed in the letter, the terms of which were accepted
and acted upon by the respondent, it was the intention to
make a contract for one year.   The verdict is therefore con-
clusive that the contract was for one year.   The jury doubtless
reasoned that the promise to pay $25 a week for six months
of the busy season could not be given force under any other
interpretation.   It is a general principle of interpretation
that a written contract must if possible be so construed as
to give effect to all parts of the instrument.   Phrases used in
the writing will be construed to be effectual rather than other-
wise when they may be so construed reasonably, having in
view all the surrounding circumstances.   17 Am. & Eng.
Ency. Law (2d ed.), 7, and cases there cited.

The contract was not lacking in mutuality.   The letter con-
tained an offer which was accepted, and the contract became
complete as soon as respondent accepted the benefits of the
offer by beginning performance on his part.   *Smith v. In-
gram*, 90 Ala. 529, 8 South. 144; *Woodbury v. Jones*, 44
N. H. 206.   The parol testimony admitted did not vary or
contradict the terms of the written instrument, and it was not
admitted for that purpose, but to explain, as it did, the
meaning of the terms used.   It was properly admitted and the
interpretation of the contract therefore became a question for
the jury in the light of this explanatory evidence.   *Stringham
v. Davis*, 23 Wash. 568, 63 Pac. 230; *Newman v. Buzard*,
24 Wash. 225, 64 Pac. 139; *Carr v. Jones*, 29 Wash. 78, 69

Pac. 646. The court did not err in its denial of the motion for nonsuit or of the challenge to the evidence.

On the above theory the jury were properly instructed, and we think the instructions were full and fair upon every phase of the case. Upon the defense of incompetence of respondent and that he abandoned the contract, there was much testimony, but there was also disputed testimony. The jury must have found against that defense; and, under the evidence in the record, it is not for us to say that the verdict is not sustained by sufficient evidence. The testimony showed that respondent was able to procure employment during a part of the remaining period covered by the contract, but not for all the time. The amount returned is within the testimony. The affidavits of two jurors alleging prejudice against appellant on the part of the jury and misconduct resulting therefrom are contradicted by affidavits of seven other jurors. We therefore find in the record no sufficient reason for disturbing the verdict.

The appellant asks a reversal upon the ground that the judgment was not entered by the clerk immediately after the verdict, but that it was signed by the judge after the motion for new trial was denied. The case of *Harris v. Fidalgo Mill Co.*, 38 Wash. 169, 80 Pac. 289, is cited upon this point. In that case the court stated that no attempt had been made to vacate the judgment, and the appellant here urges that it has put itself in position to meet that point by moving in the court below to vacate this judgment. Reference to the former opinion will, however, show that the decision upon the point was not based upon the one ground of failure to move for vacation. That matter was mentioned merely incidentally. The opinion stated that such matters are largely directory; that the record showed that the judgment was a formal one, signed by the judge and filed by the clerk. Such is the judgment here. There is no showing that appellant was in any way prejudiced by the entry of the judgment at the time it was entered. This court held, in *Brown v. Porter*, 7 Wash. 327,

34 Pac. 1105, that judgments are not void merely because they may not be entered within the time limited by law. That case was also cited approvingly in *Harris v. Fidalgo Mill Co.*, *supra*. The entry of the judgment at the time it was made was no more than an irregularity, and since it is not shown to have in any way affected a substantial right of appellant, it should not be reversed on that ground alone.

The judgment is affirmed.

FULLERTON, MOUNT, ROOT, and CROW, JJ., concur.