[No. 44087. En Banc. August 18, 1977.]

JOHN H. ROBERTS, *Appellant*, v. ATLANTIC RICHFIELD COMPANY, *Respondent*.

888

*James R. Dickens* and *James L. Austin, Jr. (of Karr, Tuttle, Koch, Campbell, Mawer & Morrow)*, for appellant.

*John F. Aslin* and *Steven S. Bell* (of *Perkins, Coie, Stone, Olsen & Williams*), for respondent.

STAFFORD, J.—John Roberts, plaintiff below, appeals from a directed verdict in favor of defendant Atlantic Richfield Company (Arco) at the close of plaintiff's case before a jury. We affirm.

Appellant had worked for Arco since 1969 and since 1959 for a company purchased by Arco. His work record indicates he was a good employee and he was steadily promoted. In October 1975, appellant, at the age of 42, was involuntarily terminated from his lower–mid–management position with Arco.

Appellant brought suit alleging: (1) that Arco discriminated against him because of his age; (2) that the circumstances of his employment created an implied condition he would not be terminated in bad faith, but that he had been so terminated; and (3) that he could not be terminated without just cause and that none existed.

Prior to trial the judge established the order in which appellant and Arco were to present their proof because if appellant established a prima facie case of age discrimination the burden of proof would shift to Arco to show appellant had been discharged for reasons other than his age. *Hodgson v. First Fed. Sav. & Loan Ass'n,* 455 F.2d 818 (5th Cir. 1972). Appellant has neither assigned error to the trial court's order of proof touching his basic claims nor has he

claimed that the order of proof prevented him from fully and adequately presenting all necessary evidence in support of those claims. Further, he has not argued the point in his brief. Thus, we will not consider the matter further. ROA I–43; *Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965).

At the close of appellant's case, the trial judge granted Arco's motion for a directed verdict based primarily on the conclusion that, with certain exceptions not here present, appellant's employment was terminable at his employer's will. Appellant's motion for reconsideration or for a new trial was denied and this appeal followed.

■ Inasmuch as the trial was terminated at the close of appellant's case, on Arco's motion for directed verdict, we must interpret the evidence most strongly against Arco and most favorably for appellant, drawing every reasonable inference in favor of Mr. Roberts. *Leach v. Ellensburg Hosp. Ass'n,* 65 Wn.2d 925, 400 P.2d 611, 9 A.L.R.3d 1303 (1965); *Parrish v. Ash,* 32 Wn.2d 637, 203 P.2d 330 (1949); *Haugen v. Minnesota Mining & Mfg. Co.,* 15 Wn. App. 379, 550 P.2d 71 (1976). Therefore, we look to the evidence, which came solely from appellant and his witnesses, and also to appellant's brief, which we assumed has treated the evidence in a light most favorable to his case.

Appellant has stated in his brief that in January of 1974, during the period of gasoline shortage, regulations of the Federal Energy Administration (FEA) established a national system of mandatory gasoline allocation. *See* 10 C.F.R. §§ 202–211.225 (1976). Arco and its dealers were subject to FEA allocation procedures and internal accounting controls designed to insure that retail dealers would receive no more than their allocated share of gasoline.

Appellant explains that he was transferred, demoted, and eventually terminated by Arco for his participation in and awareness of certain "cross–billing" procedures. "Cross–billing" is a method of record alteration or falsification by which gasoline legally allocated for delivery from a supplier to an overstocked retail dealer is, by prearrangement

between the retail dealers involved and an employee of the supplier, redirected to an understocked dealer to fill his needs in excess of his FEA allocation. In order to cover up the illegally redirected allocation, the original retail dealer is billed by the supplier as if he had actually received the allotment. The other retail dealer, who in fact has received the gasoline, then pays the first retail dealer directly without accounting to the supplier or to the FEA to show where the gasoline was actually delivered.

Appellant was first transferred and demoted by Arco for directing a "cross–billing" incident which Mr. Roberts felt had benefited a dealer who needed more gasoline than was authorized by his FEA allocation. Thereafter, appellant was terminated for his knowledge of another instance of "cross–billing" accomplished by an employee under his supervision. Appellant's letter of discharge from Arco stated that he was being discharged for actions in violation of company policy and FEA regulations.

 In Washington an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time. *Webster v. Schauble,* 65 Wn.2d 849, 400 P.2d 292 (1965); *accord, Lasser v. Grunbaum Bros. Furn. Co.,* 46 Wn.2d 408, 281 P.2d 832 (1955). However, both Congress and the Washington state legislature have created exceptions to the terminable–at–will doctrine.[1]

As appellant points out, one of the exceptions created in this state is that an employer cannot terminate an

---

[1]The National Labor Relations Act of 1935 prohibits covered employers from discharging employees who exercise the right to engage in activity, such as organizing, bargaining collectively, and striking. 29 U.S.C. § 158(a)(1) (1970). The Civil Rights Act of 1964 prohibits covered employers from discharging employees because of race, color, national origin, religion, or sex. 42 U.S.C. § 2000 e–2(a)(1) (1970). Other federal laws prohibit discharge because of an employee's age or because of certain military obligations. 29 U.S.C. § 623 (1970); 38 U.S.C. §§ 2021–26 (1970). Similarly, Washington law prohibits discharge based upon an employee's age, sex, marital status, race, creed, color, national origin, or the presence of sensory, mental, or physical handicap. RCW 49.60.180(2).

employee because of age. RCW 49.60.180(2). Thus, appellant contends, the trial court erred by granting Arco's motion for a directed verdict because he presented a prima facie case of age discrimination at trial which shifted the burden of proof to Arco to explain its reasons for his termination.

 We have not had occasion to delineate the evidence necessary to establish a prima facie case of age discrimination. However, we are not without precedent. Federal statutes, which like our own seek to eliminate such discrimination, have received judicial scrutiny. A series of federal cases has held that a plaintiff–employee has the initial burden of presenting a prima facie case of age discrimination. Thereafter, the burden shifts to the defendant–employer to show that the employee was discharged for reasons other than his age. *Hodgson v. First Fed. Sav. & Loan Ass'n, supra* at 822. To establish a prima facie case, a plaintiff must show more than that he was within the protected age group (*i.e.*, ages 40–65) and was dismissed without explanation. *Bishop v. Jelleff Ass'n*, 398 F. Supp. 579, 593 (D.D.C. 1974). In *Wilson v. Sealtest Foods Div. of Kraftco Corp.*, 501 F.2d 84, 86 (5th Cir. 1974), an employee produced sufficient evidence to defeat a motion for directed verdict when he showed that he

> was within a protected class, was asked to take early retirement against his will, was doing apparently satisfactory work, and was replaced by a younger person . . .

Appellant produced evidence that he was 42 years of age at the time of his termination and thus within the protected age group. He was doing satisfactory work until he was transferred, demoted and subsequently terminated after the "cross–billing" incidents. Further, Arco had an early retirement program for management employees who were approximately 55 years of age. But this program was not mandatory and appellant was not asked to participate in it. Even viewed most favorably to appellant, this evidence is not sufficient to support a prima facie case of age discrimination under the criteria established in *Wilson*.

Appellant does not come within the age discrimination exception to the terminable–at–will doctrine of employment.

Appellant attempted to bolster his claim of age discrimination by asserting that Arco had a policy of forcing older employees to retire or resign and then replacing them with younger employees. To prove this policy, appellant offered testimony from two former Arco employees in their *mid–fifties* who had allegedly been forced to retire about a year before because of their age. The offer of proof contained no evidence that these employees held comparable positions with Arco, that they worked under similar circumstances, or that they had been discharged in a like manner. The trial court rejected this offer of proof as irrelevant and too remote to be of significant value.

Appellant also attempted to prove Arco's policy of forcing older employees to leave by offering evidence that several Arco employees had allegedly filed age discrimination claims with the Washington State Human Rights Commission. It is not clear from the offer of proof whether these employees were to be called to testify or whether their records before the Commission were to be offered in evidence. In fact, it is not entirely clear whether the Commission had taken any action on these claims. Further, appellant did not specify whether the types of employment, conditions of discharge, or ages of the employees were remotely similar to the facts of the case at bar. The trial court rejected this offer of proof for the same reasons as the first.

■ Appellant assigns error to the trial court's rejection of his two offers of proof, but his position is not well taken. Relevancy of evidence is a matter within the discretion of the trial court. *Jacobs v. Brock,* 73 Wn.2d 234, 238, 437 P.2d 920 (1968). The elements by which relevancy is measured include whether the testimony would have a tendency to mislead, distract, waste time, confuse or impede the trial, or be too remote either as to issues or in point of time. *Diel v. Beekman,* 7 Wn. App. 139, 156, 499 P.2d 37

(1972). *See also Davies v. Metropolitan Life Ins. Co.,* 198 Wash. 482, 488, 88 P.2d 829 (1939); *Hutteball v. Montgomery,* 187 Wash. 516, 60 P.2d 679 (1936). The trial court considered these factors and did not abuse its discretion in excluding the evidence.

Next, appellant argues that he had an implied employment agreement with Arco which would allow the company to discharge him only for just cause. He concedes there was no such agreement in writing but asserts that he gave consideration in addition to his required services for such an understanding.

■ In dealing with this subject appellant has combined and confused two legal theories which must be analyzed separately. In general an employment contract, indefinite as to duration, is terminable–at–will by either the employer or employee. *Webster v. Schauble, supra.* But such a contract for "permanent" or "steady" employment (as opposed to either "temporary" or "lifetime" employment) is terminable by the employer only for just cause if: (1) there is an *implied agreement* to that effect, *or* (2) the employee gives *consideration in addition to* the contemplated services. For a complete discussion of the subject see *Validity and Duration of Contract Purporting to be for Permanent Employment,* 60 A.L.R.3d 226 (1974).

■ Looking first at whether appellant had an implied employment agreement that was not terminable at Arco's will, we note the rule that such an agreement cannot be established solely by an employee's subjective understanding or expectations as to his employment. *Lasser v. Grunbaum Bros. Furn. Co.,* 46 Wn.2d 408, 413, 281 P.2d 832 (1955). Even an assurance of "steady" employment is not sufficient. *Gensman v. West Coast Power Co.,* 3 Wn.2d 404, 101 P.2d 316 (1940). The courts will look at the alleged "understanding", the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case to ascertain the terms of the claimed agreement. *Perry v. Sindermann,* 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972). In

light of the foregoing considerations, we have reviewed the record and find no evidence of an implied agreement. At best, appellant points only to his own personal understanding that he would be employed as long as he did his job in a satisfactory manner. As noted above, such an understanding is insufficient.

■ We turn next to the subject of consideration sufficient to prevent termination of employment at the employer's will. This must be consideration *in addition to* required services which results in a detriment to the employee and a benefit to the employer. *See* 60 A.L.R.3d 226, 233 (1974). Appellant contends he gave such consideration in the forms of longevity of service, foregoing of other job opportunities, moving when transfers were ordered, and deferred compensation. The record discloses that appellant worked from 1959 to 1969 for a firm purchased by Arco. At the time of purchase, he joined the company at Arco's request and remained there until his termination approximately 7 years later. Appellant has cited no authority to support his theory that longevity of service is sufficient consideration to establish a contractual relationship between the parties. We are aware of none and assume that counsel, after diligent search, has found none. *Bremerton v. Kitsap County Sewer Dist.,* 71 Wn.2d 689, 704–05, 430 P.2d 956 (1967); *DeHeer v. Seattle Post–Intelligencer,* 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Appellant also contends that the foregoing of another job opportunity, when he was first employed by Arco, is adequate independent consideration. *Collins v. Parsons College,* 203 N.W.2d 594 (Iowa 1973), cited in support of that proposition, is not in point. In *Collins* the plaintiff gave up employment in which he was engaged at the time. Unlike Mr. Collins, appellant's position with his former employer had been extinguished by Arco's purchase of that company. Appellant merely made a choice between two newly available job opportunities. Even were appellant in the same situation as Mr. Collins, we have held the foregoing of other

job opportunities is not sufficient independent consideration to defeat an employer's right to terminate employment at will. *Heideman v. Tall's Travel Shops, Inc.,* 192 Wash. 513, 73 P.2d 1323 (1937).

Appellant also asserts that the necessary independent consideration is found in the fact that he was transferred and moved his family four times while employed by Arco. However, the case upon which he relies does not stand for that proposition. In *Schultz v. Simmons Fur Co.,* 46 Wash. 555, 90 P. 917 (1907), the real issue was whether the terms of a *letter* offering employment for 1 year established a contract.

It is urged next that Mr. Roberts has "given" his higher future pension benefits as consideration sufficient to establish an employment contract by accepting a lower present salary. We do not agree. While we have recognized that pensions are deferred compensation (*Bakenhus v. Seattle,* 48 Wn.2d 695, 698, 296 P.2d 536 (1956); *accord, Sheppard v. Blackstock Lumber Co.,* 85 Wn.2d 929, 931, 540 P.2d 1373 (1975); *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 600, 503 P.2d 460, 56 A.L.R.3d 513 (1972)) there is no authority for appellant's assertion.

We find no evidence that appellant supplied independent consideration in addition to expected services performed for Arco. In sum, appellant's arguments that he falls within either the implied employment agreement or the extra consideration exceptions to the terminable–at–will doctrine fail.

Appellant next suggests that if the foregoing arguments are found wanting, this court should either abolish the terminable–at–will doctrine or make a new exception to it.

Although no state has totally abandoned the terminable–at–will doctrine, a few have recently carved out some limited judicial exceptions to the common–law rule. For example, in *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), the court held that the discharge of an employee for filing a workman's compensation claim was an intentional wrong prohibited by statute and against public

policy. In *Petermann v. International Teamsters, Local 396,* 174 Cal. App. 2d 184, 344 P.2d 25 (1959), an employee was discharged for refusing to perjure himself before a legislative committee. The court allowed recovery to uphold a public policy against perjury. Similarly, in *Nees v. Hocks,* 272 Ore. 210, 536 P.2d 512 (1975), an employee was discharged for having served on a jury. In support of the employee's claim for damages, the court reasoned:

there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done.

*Nees v. Hocks, supra* at 218.

All of the foregoing exceptions have been created in instances where application of the terminable–at–will doctrine would have led to an outrageous result clearly inconsistent with a stated public policy and the community interest. Appellant does not suggest that he was discharged for exercising a statutory right or that his termination resulted from a refusal to engage in criminal activity such as perjury. Thus, his discharge was not wrongful under the retaliatory discharge exception established in the above cited cases.

Appellant also relies on *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 133, 316 A.2d 549 (1974), pointing out that New Hampshire has created a judicial exception to the terminable–at–will doctrine when an employee's interest is purely private rather than of general public concern. The *Monge* court, the first and only state appellate court to have taken such a position, relied upon *Petermann* and *Frampton* to establish an exception when termination is "motivated by bad faith or malice."

In *Monge,* a married woman was discharged by her foreman because she refused to go out with him. The court found such a termination to be malicious and wrongful. But *Monge* is not in point. Unlike Olga Monge, appellant was involved in what was, at best, questionable employee conduct. He admits to both participation in and knowledge of

unreported "cross–billing" procedures. A careful reading of appellant's own direct testimony as well as his own brief makes it clear that he knew there were real problems in disclosing the "cross–billing" incidents to his superiors. Rather than establishing bad faith or malice, appellant's own direct testimony distinguishes *Monge* and would defeat his claim even if we were to follow the *Monge* exception. We agree with the trial court that there was no evidence that appellant's termination was "anything but a dismissal that was in the context of business operations."

On the record before us we can neither reach the question of whether we should totally abrogate the common–law terminable–at–will doctrine nor the question of whether we should follow the *Monge* court and make an exception thereto based on bad faith and malice. While the future of this doctrine is a compelling issue, it is one that must be left for another day and different facts.

Appellant claims the trial court erred by excluding testimony of an expert economist pertaining to his loss of future income. He argues that the projections required calculations and understanding in an area not within the jurors' common experience. The testimony was excluded by the trial court because it was based upon an assumption that appellant had a guaranteed lifetime employment contract and because the conclusions were completely speculative. Under the circumstances, the trial judge felt the testimony would tend to confuse rather than assist the jury.

Admissibility of expert opinion evidence is within the trial court's discretion. *Church v. West,* 75 Wn.2d 502, 508, 452 P.2d 265 (1969). Relevant considerations in weighing the admissibility of opinion testimony are whether the evidence will assist the jury in understanding matters not within common experience and whether the jury is likely to be misled. *Hill v. C. & E. Constr. Co.,* 59 Wn.2d 743, 745, 370 P.2d 255 (1962). It is clear from the record the trial court had these considerations in mind when it ruled against appellant. The testimony was properly excluded.

■ The trial court continued appellant's employee benefits pending trial. However, it is contended that the trial court erred by refusing to extend them pending appeal. This assignment of error is not supported by authority. Assignments of error not supported by authority in a brief ordinarily will not be considered on appeal and we see no reason to depart from that practice in this case. *Northern State Constr. Co. v. Robbins,* 76 Wn.2d 357, 457 P.2d 187 (1969).

The trial court is affirmed.

WRIGHT, C.J., and HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J., concurs in the result.

Petition for rehearing denied October 3, 1977.