IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LIZ TATE, | ) | |
| | ) | No. 33974-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TATE TRANSPORTATION, INC., a | ) | UNPUBLISHED OPINION |
| Washington corporation, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — Liz Tate appeals the dismissal at summary judgment of her wrongful termination action, arguing that an agreement for continued employment existed that was not subject to the statute of frauds and that a material factual question existed concerning whether she was terminated for cause. We conclude that the trial court correctly determined that no agreement existed and affirm.

FACTS

Ms. Tate and her then-husband Tom Tate owned and operated a trucking company, Tate Transportation. They dissolved their marriage and Tom Tate assumed ownership of the business. Ms. Tate continued working for the company. In 2008, after 20 years operating the business, Mr. Tate sold the company to Ray and Chris Nulph, a father and son.

Ms. Tate served as the company's safety director and was responsible for safety and compliance needs, including risk management and insurance. The Nulphs retained Ms. Tate after the purchase in order to ensure a smooth transition, but reduced her to a part-time position making $50 per hour and retaining the same benefits. Ray Nulph also wanted the two Tates to train Chris Nulph so that he would be able to eventually run the business on his own. Because of his inexperience, the Tates had difficulty training him and Ms. Tate indicated she had to be hard on him.

As Tom Tate's role with the company waned, Ms. Tate became more concerned about her job security. She asked Chris Nulph if her position was secure:

> On several occasions I asked Chris point blank: "Is my job as Safety Director secure for the indefinite future?" Chris would always assure me, in no uncertain terms, that I would have a job with Tate Transportation as long as I wanted. In fact, he told me on numerous occasions, . . . that I would have the job as long as I wanted and if I decided to leave that he would like me to promise the Company that I would provide one-year notice so I could hire and train my replacement. I agreed and said that I would give the notice and train my successor.

Clerk's Papers (CP) at 114-115. One of these conversations took place in front of Mr. Tate.

In June 2012, Ms. Tate desired to have a friend visit from Mexico and needed to assure Homeland Security of her own employment to aid the gaining of a visa for her visitor. Mr. Nulph agreed that her employment was still secure and let her draft a letter for his signature. He signed the following letter on the company letterhead:

2

Statement from Employer for Liz Tate

Liz Tate joined this company as an owner [in] June 1988; she became an employee [in] May 2008 when the company was sold.

In May of 2008, the company was sold to Ray and Chris Nulph. They have had total ownership of the company since that time. Liz Tate, now an employee, was asked to stay on with the company to insure a smooth transfer of operations, which she has done. This is considered a long term temporary position. She has agreed to stay on as an employee at least until January 2017.

She receives an annual wage of approximately, $75,000.00 with benefits. Her position is important to the company, as she is the one who handles all of the Federal Department of Transportation Compliance requirements, controlled Substance testing, accident investigation, hiring and termination of all regulated drivers.

If I can be of any further assistance, please contact me.

Sincerely,

[Signature]

Chris Nulph
Secretary/Treasure [sic]
Tate Transportation, Inc.

CP at 126. The January 2017 date had been suggested by Mr. Nulph.

The trucking company discovered in May 2014, that it would be losing two of its biggest customers. Chris Nulph thought the company would need to expand its business in Oregon to make up for the losses. On May 27, 2014, he asked Ms. Tate to return to full-time work in order to expand the business, but did not tell her about the loss of customers and that the business would be struggling. She declined the opportunity given

3

the travel and because the work environment in the office was stressful. She indicated that if he could improve the office situation, she would reconsider.

The company fired Ms. Tate on May 30. The stated reason was a cost-cutting measure. The Nulphs also indicated they considered how she "refused to help us at the time we needed her to help develop new business, her bullying behavior . . . and how she frequently undermined [Chris's] authority in the office." CP at 57.

Ms. Tate filed this wrongful termination action in November 2014. Tate Transportation eventually sought summary judgment. The trial court granted the motion on the basis that there was no employment contract that would satisfy the statute of frauds. Report of Proceedings at 28. After an order was entered, Ms. Tate timely appealed to this court.

## ANALYSIS

The parties dispute whether there was an agreement, whether the agreement complied with the statute of frauds, and whether material questions of fact exist concerning the reason Ms. Tate was terminated from her position. We agree with the trial court that any agreement did not comply with the statute of frauds and, thus, failed as a matter of law. We therefore need not address the other contentions.

The standards for review of summary judgment rulings are well settled. We review a summary judgment de novo; our inquiry is the same as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts, and all reasonable

4

inferences to be drawn from them, in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

Employment in Washington is "at will" unless a contract or an implied contract exists that provides for other possibilities. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 229-230, 685 P.2d 1081 (1984); *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). Termination only for cause will exist if either the parties agree to it or if the employee gives some consideration other than the performance of her job. *Roberts*, 88 Wn.2d at 894.

Our statute of frauds requires that all contracts extending more than one year must be in writing. In relevant part, it provides:

> In the following cases, . . . any agreement, contract, and promise shall be void, unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, . . . that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof.

RCW 19.36.010. For a writing to satisfy the statute of frauds, it must contain every essential element of the contract. *Smith v. Twohy*, 70 Wn.2d 721, 725, 425 P.2d 12 (1967). The essential elements of a contract include the parties, the promise, the terms and conditions, and the consideration. *Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs.*, 104 Wn.2d 105, 108, 702 P.2d 459 (1985). In an employment context, the writing

5

must include the job responsibilities. *DePhillips v. Zolt Constr. Co., Inc.*, 136 Wn.2d 26, 31, 959 P.2d 1104 (1998) (stating, in the statute of limitations context, that a signed employee handbook is an insufficient writing because it does not name one of the parties, nor does it list job responsibilities).

Ms. Tate contends that her promise to give one year's notice before leaving is the extra consideration necessary to establish that she could only be terminated for cause. That contention, however, undercuts her position on the statute of frauds argument. For one thing, it establishes that the term of employment was at least one year and, thus, within the writing requirement of the statute. It also suggests that essential terms of the agreement were not stated in writing.

Ms. Tate identifies the letter to Homeland Security as the writing that satisfied the statute of frauds.[1] That document, however, is insufficient to establish the essential terms of the agreement. In particular, it provides no evidence of the consideration supporting the alleged contract because her promise to give one year's notice is not contained in the letter. Similarly, there is no evidence that the parties had agreed Ms. Tate could only be

---

[1] For purposes of this opinion, we will accept the letter to a third party as a "writing," despite Tate Transportation's argument to the contrary. There appears to be no pertinent Washington authority, but there is some ancient other authority in support of Ms. Tate's position. *See* Annotation, *Writing Between One of the Parties to a Contract and His Agent or a Third Person as Satisfying the Statute of Frauds*, 112 A.L.R. 490 (1938); *Truskett v. Rice Bros. Live Stock Comm'n Co.*, 180 S.W. 1048 (Mo. Ct. App. 1915).

terminated for cause. The one year notice provision was an essential term of the agreement because it altered the at will nature of the relationship.

Because the purported agreement was for more than one year, it was required to be in writing pursuant to the statute of frauds. The only acknowledged writing, the letter to Homeland Security, was insufficient. Accordingly, the trial court correctly granted summary judgment on that issue.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Siddoway, J.

7