IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| SID BADRI,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>ALASKA AIRLINES, a foreign for profit corporation,<br><br>　　　　　　　　Respondent. | No.87426-8-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Sid Badri appeals the trial court's summary judgment dismissal of his claims against Alaska Airlines (Alaska) for violation of the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, breach of contract, and negligent misrepresentation. We affirm.

FACTS

Badri is a retired commercial airline pilot with over 8,000 hours of experience flying the Boeing 737 aircraft. He also has four years of experience training pilots to fly the 737. In 2021, Badri applied to be a Boeing 737 flight simulator instructor for Alaska. Scott Nielsen, Alaska's general manager of training, interviewed Badri for the position. During the interview, Nielsen told Badri that the job would be a " 'train to proficiency' " position.

Alaska offered Badri the position.  It sent him an offer letter that included a paragraph titled "At-will employment," which explained, in relevant part:

> This offer letter does not alter the at-will nature of your employment. The employment relationship may be ended at any time by you or Alaska Airlines for any reason, with or without notice or cause.

Badri accepted the position and began Alaska's flight instructor training on September 24, 2021.

Alaska's flight instructor training consists of three separate modules.  The training is approved by the Federal Aviation Administration (FAA) and follows the "Advanced Qualification Program" (AQP) metric.  The AQP allows for flexible techniques and performance-based training.  And it includes a concept called "train-to-proficiency."  "Train-to-proficiency" means "an instructor-in-training will not be 'checked off' for a task until the trainee is proficient, regardless of how many hours are spent on that task."  To advance through the training process, a potential instructor must complete each step of the program sequentially.

Alaska rates instructors on both "qualifying" and "gate" events.  A candidate qualifies for an event by showing proficiency at that task.  Proficiency is achieved by scoring a rating of 3 or 4.  A candidate clears gate events by showing cumulative proficiency at the skills learned in the qualifying events.  In October 2021, Badri passed the first module, which was the "ground school portion of the training."

On October 22, 2021, Badri began the second module, which is simulator training and consists of six parts.  Despite Badri's significant experience flying and instructing on the Boeing 737, he struggled to show proficiency in these

events.  In part 1, Badri failed to show proficiency in 9 of the 19 qualifying events, even after several attempts at repeating them.  In part 2, Badri showed proficiency in many of the events, but he received nonqualifying scores in tasks for which he had once shown proficiency.  He also failed to show proficiency in another task.  And in part 3, Badri failed to show proficiency in 10 events, 9 of which he had previously shown proficiency.

Badri kept training, and Alaska restarted his rating process in March 2022. Badri showed proficiency in all the events in part 1.  Then, in part 2, Badri failed to show proficiency for 2 events, both of which he had qualified for in his first round of testing.  And in part 3, he failed to show proficiency in the same event he had failed during his first attempt at training.  Based on his performance, Alaska gave Badri "extra training" on March 29, 2022.  During that training, Badri failed to show proficiency in 3 tasks.  Still, Alaska moved Badri to part 4 of the simulator training on March 30.  In part 4, Badri failed to show proficiency in 10 events.

On March 31, 2022, Alaska again gave Badri "extra training."  In that training, he continued to struggle to show proficiency in several gate events. That same day, Badri's instructor noticed Badri was having trouble getting in and out of the pilot seat because of back pain and notified Nielsen.  Nielsen decided that Badri needed to "fix his medical issues" before finishing his training.  He told Badri " 'not [to] come back until his back was healed.' "

Badri suspended his training and left the facility.  Alaska kept Badri on full salary until August 30, 2022.  On August 31, Badri went on short-term disability

under the FMLA[1] to address his back issues.  Then, in September 2022, he had two back surgeries.  And in December 2022, Alaska changed his employment status to " 'Leave of Absence.' "  On December 30, Badri's attending surgeon completed a work status report, saying Badri could return to work on January 9, 2023 but should not lift more than 30 pounds until March 2, 2023.

While Badri was on leave, Chelsea Ozolin replaced Nielsen as Alaska's general manager of training.  She reviewed the status of instructors in training to determine whether any were taking longer than expected without improvement.  Ozolin identified Badri as one of the individuals.  She noticed Badri "had been in the program for a relatively long time and was not improving as [she] hoped."  And that "[e]ven after restarting part of one program, when [Badri] should have the skills completely mastered, he was struggling with many aspects of it."  She determined he was not going to be successful and decided to terminate him.  On January 27, 2023, Ozolin called Badri and terminated him because of his " 'inability to successfully complete the required training and meet the qualifications for [his] role.' "

In September 2023, Badri sued Alaska for violating the WLAD, breach of contract, and negligent misrepresentation.  Alaska moved for summary judgment on all three causes of action.  The trial court granted its motion and dismissed Badri's lawsuit.

Badri appeals.

---

[1] Family and Medical Leave Act of 1993, 29 U.S.C. § 2601.

ANALYSIS

Badri argues the trial court erred by dismissing at summary judgment his WLAD, contract, and negligent misrepresentation claims. We address each argument in turn.

We review a trial court's grant of summary judgment de novo. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

A defendant moving for summary judgment can challenge whether the plaintiff produced competent evidence to support the essential elements of their claim. *See Boyer v. Morimoto*, 10 Wn. App. 2d 506, 519, 449 P.3d 285 (2019). The plaintiff must then provide sufficient evidence to support those elements. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The plaintiff may not rely on the allegations in their pleadings. *Id.* Instead, the plaintiff must respond with evidence setting forth specific facts to show that there is a genuine issue for trial. *Id.* at 225-26. We consider all facts submitted and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). If the plaintiff fails to meet their burden, summary judgment for the defendant is proper. *See Knight v. Dep't of Lab. & Indus.*, 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014).

1. <u>The WLAD</u>

Badri argues the court erred by dismissing at summary judgment his discriminatory discharge claim. We disagree.

The WLAD prohibits employers from discharging any employee based on a protected characteristic, including the presence of any "sensory, mental, or physical disability." RCW 49.60.180. Violation of this provision supports a discriminatory discharge claim. *Mackey v. Home Depot USA*, *Inc.,* 12 Wn. App. 2d 557, 570, 459 P.3d 371 (2020). Because direct evidence of discriminatory intent is rare, plaintiffs may rely on circumstantial, indirect, and inferential evidence to establish discriminatory action. *Mikkelsen v. Pub Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 526, 404 P.3d 464 (2017). In that regard, Washington courts have adopted the *McDonnell Douglas*[2] three-step evidentiary burden-shifting framework for discriminatory discharge claims. *Id.* Under this framework, a plaintiff must make a prima facie case of discriminatory discharge by showing that they were (1) within a statutorily protected class, (2) discharged by the defendant, and (3) doing satisfactory work. *Mackey*, 12 Wn. App. 2d at 571. If a plaintiff establishes a prima facie case, it creates a rebuttable presumption of discrimination. *Mikkelsen,* 189 Wn.2d at 527.

The burden then shifts to the defendant, who must " 'articulate a legitimate, nondiscriminatory reason' " for the discharge. *Mikkelsen,* 189 Wn.2d at 527 (quoting *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446, 334 P.3d 541 (2014)). The defendant need not persuade the court that it was actually

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

motivated by the nondiscriminatory reason, only that the defendant's evidence, if taken as true, would permit the conclusion that there was a nondiscriminatory reason. *Id.* at 533.

If the defendant meets its burden, the plaintiff must then produce sufficient evidence that shows the defendant's alleged nondiscriminatory reason was a "pretext." *Mikkelsen,* 189 Wn.2d at 527.

> "An employee may satisfy the pretext prong by offering sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is pretextual or (2) that although the employer's stated reason is legitimate, discrimination nevertheless was a substantial factor motivating the employer."

*Id.* (quoting *Scrivener*, 181 Wn.2d at 446-47). An employee can show that a stated reason for termination is pretext in several ways, including

> "that the reason has no basis in fact, it was not really a motivating factor for the decision [or] it lacks a temporal connection to the decision or was not a motivating factor in employment decisions for other employees in the same circumstances."

*Scrivener*, 181 Wn.2d at 447-48[3] (quoting *Kuyper v. Dep't of Wildlife*, 79 Wn. App. 732, 738-39, 904 P.2d 793 (1995)). The plaintiff need not show that discrimination was the only motivating factor for the discharge because an employer's decision may be based on both legitimate and illegitimate reasons. *Mikkelsen,* 189 Wn.2d at 534.

Here, the parties do not dispute that Badri was part of a protected class or that Alaska discharged him. And Badri argues that he showed satisfactory performance by putting forth training records "demonstrating that he did, in fact, successfully complete every Task until the time he was forced to leave the

---

[3] Alteration in original.

training program." But the training records do not show that Badri was demonstrating satisfactory performance. Instead, they show that despite his extensive experience flying the 737, Badri struggled to complete the simulator training module. He failed several tasks and had to repeat some events several times to qualify. And he could not show consistency at the tasks after qualification. As a result, Alaska provided Badri extra training. Still, after five months in the program, Badri could not successfully complete the simulator module before he suspended his training to address his back issues.

Other than his bare assertion that the training records show he successfully completed every task, Badri offers no evidence that he demonstrated satisfactory performance. Instead, he argues that Alaska overstates his poor performance. According to Badri, "[t]wo separate Tasks associated with [part 4] were mistakenly not checked as having demonstrated proficiency." But the record shows that Badri failed to perform 10 other events to proficiency in that section. And while Badri performed those events to proficiency on March 30, 2022, he failed to show proficiency in several of the same events during his extra training on March 31. His failure to consistently show proficiency in the qualifying tasks amounts to a failure of gate events. As Ozolin explains in her declaration,

> [f]ailure of a gate event is a much more serious occurrence than failure of a qualifying event, because the latter is intended to be a training exercise while the former is intended to be a test on skills the candidate has now learned.

Finally, Badri argues it was taking him longer than expected to complete the training because when he began the program, he was "simply sitting [in the

simulator] to occupy a seat while another individual was training."  But even if the start of Badri's training was delayed, the records show that he had been actively training for more than five months, well beyond the three-month average time for completion.  And that when he suspended training, Badri had yet to complete at least two parts of the second module and the entire third.

The evidence does not show a prima facie case of discriminatory discharge.  Instead, it supports Alaska's legitimate nondiscriminatory explanation that it terminated Badri for his " 'inability to successfully complete the required training and meet the qualifications for [his] role.' "

Still, pointing to *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087 (9th Cir. 2007), Badri argues that discrimination was a substantial factor in Alaska's decision to terminate his employment.  In that case, the employee informed her supervisor that she was seeking medical treatment for bipolar disorder and that the condition caused her to engage in outbursts and other impulsive behavior. *Id.* at 1091.  Later, her employer terminated her based on " 'violent outbursts,' " which she alleged resulted from her bipolar disorder.  *Id.* at 1091-92, 1094.  The Ninth Circuit concluded the evidence that the employer fired her for conduct caused by her disability amounted to evidence that her disability was a substantial factor in the decision to terminate her employment.  *Id.* at 1094.

This case is not like *Gambini*.  Badri shows no evidence that his poor performance in training was related to his back issues.  And the record shows that Alaska discharged him for his poor performance.  So, Badri fails to show that Alaska terminated him for conduct resulting from his disability.

9

The trial court did not err by dismissing Badri's WLAD claim at summary judgment.[4]

2. Breach of Contract

Badri argues the court erred by dismissing his breach of contract claim. Badri acknowledges that his employment contract was terminable "at-will." But he claims Alaska modified that contract with a promise to train him to proficiency rather than terminate him for poor performance. We disagree.

Employment relationships in Washington are generally terminable at-will by either party. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). But the at-will nature of an employment agreement can be modified in three ways. *Kuest v. Regent Assisted Living, Inc.*, 111 Wn. App. 36, 48, 43 P.3d 23 (2002) (citing *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 34-37, 959 P.2d 1104 (1998)). First, the parties may expressly agree to modify its terms. *Id.* Second, the parties' conduct may create an implied modification of the terms. *Id.* And third, an equitable claim may exist where an employer makes promises of specific treatment for conduct that precludes enforcement of the at-will aspect of the employment agreement. *Id.*

---

[4] Badri also argues that the temporal proximity from Alaska's discovery of his disability to his discharge shows that discrimination was a substantial factor in its decision to terminate his employment. But Alaska discovered Badri's disability in March 2022. And it discharged him 10 months later in January 2023. Badri fails to explain how that discharge 10 months after Alaska learned of his disability shows discriminatory intent. Particularly when Badri purportedly resolved the issues with his back weeks before his termination.

When determining whether an implied agreement modified the at-will nature of employment,

> courts will look at the alleged "understanding", the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case to ascertain the terms of the claimed agreement.

*Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977). An employee's subjective understanding or expectation as to a term of their employment is not enough to establish an implied agreement to modify the nature of their employment. *Id.*

Badri argues that Nielsen's promise to train him to proficiency changed the at-will nature of his employment such that he could be not be terminated for poor performance. But the evidence shows that the term "train-to-proficiency" is customarily used in the industry to describe an FAA-approved AQP training metric. Ozolin stated in her declaration that

> [t]rain-to-proficiency simply means that an instructor-in-training will not be "checked off" for a task until the trainee is proficient, regardless of how many hours are spent on that task. It is not a guarantee of employment—it is a threshold requirement for serving as an instructor. AQP programs still include review boards and other checks to ensure that trainees who are not advancing can be identified and separated if need be.

Badri offers no evidence to the contrary. Indeed, Badri agrees that the term "train-to-proficiency" did not amount to a promise not to terminate him for poor performance. In his deposition, Badri said that he "never thought of" train-to-proficiency as a guarantee of employment.

Because Badri fails to show that the parties agreed to modify his at-will employment, the trial court did not err by dismissing his breach of contract claim.[5]

We affirm summary judgment for Alaska.

_____, ACJ

WE CONCUR:

_____          _____

---

[5] Badri also argues the court erred by dismissing his negligent misrepresentation claim.  He contends Alaska failed to comply with Nielsen's commitment "that the position was train to proficiency" and then fired him for "failing to meet training standards."  Because we determine the term "train-to-proficiency" did not guarantee Badri employment, he cannot show that Alaska engaged in misrepresentation.  The court did not err by dismissing that claim.