IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ROBERT SOELBERG, | No. 87448-9-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| ALASKA AIRLINES, a foreign for profit corporation, | |
| Respondent. | |

BOWMAN, A.C.J. — Robert Solberg appeals the trial court's summary judgment dismissal of his breach of contract and negligent misrepresentation claims against Alaska Airlines (Alaska). We affirm.

FACTS

Soelberg is a retired airline pilot with over 40 years of flying experience, including experience with the Boeing 747 and 727 aircrafts. He also has over 25 years of experience as a flight simulator instructor. In 2021, Soelberg applied to become a Boeing 737 flight simulator instructor for Alaska. Scott Nielsen, Alaska's general manager of training, interviewed Soelberg for the position. During the interview, Nielsen explained that Alaska uses a training system known as the "Advanced Qualification Program" (AQP). Nielsen also told Soelberg that he would be able to " 'train to proficiency' " within the AQP system. Soelberg understood this to mean he "would be able to repeat modules within the training program as necessary until [he] became proficient."

Alaska offered Soelberg the position. It sent him an offer letter that included a paragraph titled "At-will employment," which explained, in relevant part:

> This offer letter does not alter the at-will nature of your employment. The employment relationship may be ended at any time by you or Alaska Airlines for any reason, with or without notice or cause.

Soelberg accepted the position and began his training with Alaska in January 2022.

Alaska's AQP training system is approved by the Federal Aviation Administration (FAA). It allows for flexible techniques and performance-based training. And it includes a concept called "train-to-proficiency." "Train-to-proficiency" means "an instructor-in-training will not be 'checked off' for a task until the trainee is proficient, regardless of how many hours are spent on that task." There are three modules that a potential instructor must complete during training. In these modules, there are "qualifying" training events that provide trainees with opportunities to practice skills. And then there are "gate" events, which are cumulative tests of the skills already learned in the qualifying events. To advance through the training process, a potential instructor must complete each step of the program sequentially. The flight instructor training typically takes about three months to complete.

Soelberg successfully completed the first two modules of the training. While completing the third module, which has three subcomponents, he failed two gate events. After additional training, he completed one of these gate events

but still failed the other. As of October 2022, 10 months after he began the training program, Soelberg still had not completed all three modules.

In October 2022, Chelsea Ozolin replaced Nielsen as Alaska's general manager of training. Ozolin reviewed Soelberg's performance record and decided to terminate his employment. On November 9, 2022, Alaska terminated Soelberg " 'due to [his] inability to successfully complete the required training and meet the qualifications for [his] role.' "

On September 5, 2023, Soelberg sued Alaska for breach of contract and negligent misrepresentation. On September 6, Alaska moved for summary judgment dismissal of Soelberg's claims. The court granted its motion and dismissed Soelberg's complaint with prejudice.

Soelberg appeals.

ANALYSIS

Soelberg argues the trial court erred by dismissing his complaint at summary judgment. We disagree.

We review a trial court's grant of summary judgment de novo. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

A defendant moving for summary judgment can challenge whether the plaintiff produced competent evidence to support the essential elements of their claim. *See Boyer v. Morimoto*, 10 Wn. App. 2d 506, 519, 449 P.3d 285 (2019).

The plaintiff must then provide sufficient evidence to support those elements. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The plaintiff may not rely on the allegations in their pleadings. *Id.* Instead, the plaintiff must respond with evidence setting forth specific facts to show that there is a genuine issue for trial. *Id.* at 225-26. We consider all facts submitted and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). If the plaintiff fails to meet their burden, summary judgment for the defendant is proper. *See Knight v. Dep't of Lab. & Indus.*, 181 Wn. App. 788, 795-96, 321 P.3d 1275 (2014).

Soelberg argues the court erred by dismissing his breach of contract claim. He acknowledges his employment with Alaska was terminable "at-will" but argues Alaska's promise to train him to proficiency modified the at-will nature of his employment agreement.

Employment relationships in Washington are generally terminable at-will by either party. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). But the at-will nature of an employment agreement can be modified in three ways. *Kuest v. Regent Assisted Living, Inc.*, 111 Wn. App. 36, 48, 43 P.3d 23 (2002) (citing *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d 26, 34-37, 959 P.2d 1104 (1998)). First, the parties may expressly agree to modify its terms. *Id.* Second, the parties' conduct may create an implied modification of the terms. *Id.* And third, an equitable claim may exist where an employer makes

4

promises of specific treatment for conduct that precludes enforcement of the at-will aspect of the employment agreement. *Id.*

When determining whether an implied agreement modified the at-will nature of employment,

> courts will look at the alleged "understanding", the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case to ascertain the terms of the claimed agreement.

*Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977). An employee's subjective understanding or expectation as to a term of their employment is not enough to establish an implied agreement to modify the nature of their employment. *Id.*

Soelberg argues that Nielsen's promise to train him to proficiency changed the at-will nature of his employment such that he could not be terminated for poor performance. But the evidence shows that the term "train-to-proficiency" is customarily used in the industry to describe an FAA-approved AQP training metric. Ozolin explained in her declaration that

> [t]rain-to-proficiency simply means that an instructor-in-training will not be "checked off" for a task until the trainee is proficient, regardless of how many hours are spent on that task. It is not a guarantee of employment—it is a threshold requirement for serving as an instructor. AQP programs still include review boards and other checks to ensure that trainees who are not advancing can be identified and separated if need be.

Soelberg offers no evidence to the contrary. Indeed, Soelberg agrees that the term "train-to-proficiency" did not amount to a promise not to terminate him for poor performance. Soelberg explained in his declaration that he believed that

5

Nielsen's statement meant that

> Alaska committed that [his] employment would be conducted under the AQP concept, and [he] would be able to repeat certain modules as necessary in order to become proficient.

And in his deposition, Soelberg stated that he understood this did not mean that he "could train indefinitely" and that Alaska "could not fire [him]." He agreed that his position with Alaska was "at-will employment" and that Alaska could terminate his employment "at any point." He also agreed that Alaska "gave [him] all the time [he] requested [to train] up to that point" when he failed the final gate event.

Because Soelberg fails to show that the parties expressly or impliedly agreed to modify his at-will employment, the trial court did not err by dismissing his breach of contract claim.[1]

We affirm summary judgment for Alaska.

_____, ACJ

WE CONCUR:

_____     _____

---

[1] Soelberg also argues the court erred by dismissing his negligent misrepresentation claim. He contends that Nielsen "promised" to train him to proficiency and that Alaska "recognized [he] would rely upon this promise when accepting employment," which Alaska "then failed to honor." Because we determine the term "train-to-proficiency" did not guarantee Soelberg employment, he cannot show that Alaska engaged in misrepresentation. The court did not err by dismissing that claim.

6